I. F. R.

___

## Joel K. Clark v. Town of Corinth.

### *Highways. Highway Surveyors. Towns. Evidence.*

Towns are liable for injuries from insufficiencies of highways caused by sudden freshets, if the highway surveyor of the district had time after notice of the defect to repair it before the accident with the means in his control, considering as well his means by virtue of his official statute authority as the means in his hands individually.

No lack of diligence could be charged upon the town until notice to the proper officers of the insufficiency, in a case where it is not claimed that the freshet was itself so extraordinary as to amount to a notice that the road would need repairs, or that the dangerous condition of the road had existed long enough to charge the town officers with fault in not having discovered its condition without notice.

Emergencies might arise which would warrant the surveyor in delaying, after notice, the repair of a sudden injury to the road. It may be necessary to delay in order to make preparation for commencing work, the road in the mean time being securely fenced to protect travel, but the mere fact that the repairs could not be completed on the day the notice is given, would not alone be enough to justify the surveyor in waiting until the following day to commence that which the statute requires to be done forthwith.

The statutes should receive a reasonable construction, and it was held that reasonable construction was given in the charge to the jury, that the repairs should be "made immediately, as soon as practicable."

The fact that the highway in question was a "neighborhood road," and not so much traveled as a great public thoroughfare, does not at all exempt it from the operation of the statute.

The amount of travel the road accommodates is always a proper element of consideration upon the question of what is a condition of reasonable safety, but a sudden

injury, when it renders any public highway dangerous for travel, should be repaired as soon as practicable.

A highway surveyor in giving information to a traveler that a highway in his district is safe, does not act as the agent of his town, and his statement to that effect, if incorrect, does not add to the responsibility of the town, but on the question of prudence, parties may prove what information as to the roads, from the surveyor or anybody else, was communicated to the traveler.

The plaintiff was informed by the surveyor of the danger at or near a certain culvert, but at the same time was told that if he could pass there he would have no trouble beyond. He passed that point in safety, but in passing beyond met with the accident complained of. *Held*, that the only effect of this information, so far as his injury was concerned, was to lessen the force of the warning which the danger at the culvert would naturally give, and could only be weighed by the jury in the plaintiff's favor upon the question of whether he was in the exercise of ordinary prudence in traveling beyond the culvert.

ACTION ON THE CASE, for an injury sustained by the plaintiff by reason of the insufficiency of a highway in the town of Corinth. Plea, the general issue. Trial by jury, December term, 1867, Orange county, PECK, J., presiding. Verdict for the plaintiff.

It was conceded on the trial that the road in question was one which the defendant town was bound to keep in repair, and that at the time in question the road was insufficient and out of repair, and no question was made by the defendants' counsel but that the injury complained of was caused by the insufficiency of the road.

It appeared that on Sunday, the last day of May, 1863, just at evening, there was a sudden shower, that so swelled a small stream which ran across the road in question that the road, close by the culvert or little bridge through which the stream ran, was washed out, leaving a considerable gulf at that point in the road, extending across the road, but the culvert or bridge was not torn up or disturbed ; that from this culvert the road was descending more or less for thirty or forty rods, some portions of it being quite steep ; that the road at or near the culvert, having washed out, the water ran along a short distance at the lower edge of the road, in the ditch, and then returned to the traveled track of the road, and there for a distance of twenty-five rods or more continued down the hill, some part of the way within the traveled track, and rendered the road in places dangerous to travel over, and this was the result of said shower.

The plaintiff was a peddler, driving a common tin peddler's cart composed of a large box set on thoroughbraces, drawn by one

horse, and it appeared that he staid at the house of one Harriman over that Sunday, and until five or six o'clock on the Monday afternoon, when he started out with said cart to pass over this road, to one Stevens' on Waits River, where he was intending to put up for that night.

It appeared that one Avery Hodge, who was the highway surveyor for the district in which the road was situated, lived at the point where the road from Harriman's came into the road in question, and the plaintiff in going from said Harriman's to said Stevens' would pass by said Hodge's house. The place where said culvert was washed out was but a short distance down the hill from said Hodge's house, but not in sight from his house, and said culvert was the nearest point to said house where said road was injured by the rains.

It appeared that one Ariel B. Hodge, son of the surveyor, with his sister, who both lived with said surveyor, came up the hill over said road in the evening of the Sunday before the accident to the plaintiff, after it was dark, having been detained by the shower, and the said Ariel B. noticed while passing up the hill that the water was running in the road in an unusual way, and noticed that the road was gullied after he passed the flat at the foot of the hill, and was worse along further up the hill, but he had no difficulty in passing over the road.

The plaintiff's evidence tended to show that young Hodge gave information to his father at the breakfast table the next morning (Monday morning) of what he had observed upon the road the evening before, but that said Hodge and his son went to planting potatoes that forenoon, and planted till about eleven o'clock, when he went down and examined the road, and that they planted potatoes also in the afternoon.

The defendant's evidence tended to show that at about noon on Monday said Hodge was notified by one Batchelder, that the road was very badly gullied out, and that this was the first information he had of it, and that in a few minutes after, seeing his son, and mentioning to him what Batchelder had said, his son then for the first time informed him of what he had observed the evening before, and told him he ought to go and see it and he would finish

planting; that thereupon said Avery Hodge, knowing that the plaintiff had passed the Sunday on the hill, at said Harriman's, and thinking he might come along soon, and attempt to pass over this road, went and examined it.

Avery Hodge was a witness for the defense, and testified that when he examined the road as above stated, he examined all along down the hill from said culvert and found it in a very unsafe and dangerous condition, and so much out of repair that it was in his opinion impossible to put the same in repair, or in a reasonably safe condition, on that day; that after examining said road he returned to his house and let his son go off to Waits River, some miles, and kept watch for the plaintiff himself, for the purpose of notifying him of the dangerous condition of the road, but it appeared that said Hodge took no measures whatever to repair said road, or any part of it, but was engaged for the most part during the day at his farming business, planting potatoes, and took no measures to notify any of the district to help repair it. At evening on said Monday after the injury had happened to the plaintiff, one of the inhabitants of the district called at Hodge's house and informed him of the accident, and Hodge then asked him to come out next day and work on said road, and the man said he could not the next day, but would come Wednesday, and Hodge thereupon postponed it till Wednesday, when they repaired it; that while said Hodge was at his house watching for the plaintiff and sometime about six o'clock, the plaintiff came along with his peddler cart, and the defendants' evidence tended to show that said Hodge then informed the plaintiff that the road was badly washed and gullied for many rods down the hill; that for a great distance it was in an unsafe and dangerous condition, and that it would be impossible for the plaintiff to get through, especially with such a wagon and load as he had, and that he had better not attempt the passage.

It appeared that previous to this, the same afternoon, said Harriman had passed over the road with a common single wagon, with a live calf in his wagon, and it was known by Hodge and the plaintiff at the time of their talk that Harriman had gone down upon the road and had not returned.

The plaintiff's evidence tended to show that said Hodge at that time informed the plaintiff that the road was badly gullied; that the road was very bad, and that he did not think the plaintiff could go; that it was dangerous, and that the plaintiff had better not attempt it; that the plaintiff told Hodge that Harriman had gone over, and the plaintiff did not believe but that he could, and Hodge said he did not believe the plaintiff could go as well as Harriman because the plaintiff's cart and load were heavier. The plaintiff told him that he had left his load, and sold out pretty much, but Hodge thought the cart would be top heavy, and the plaintiff had better not go.

While they were talking one Jackman came along in a one horse wagon with a basket of pigs, going over this road, and Hodge told him about the condition of this road pretty much as he had told the plaintiff, but Jackman said he was in a hurry and must go, and passed on over the road in question without injury. The plaintiff then asked Hodge how bad the road was, and he said pretty bad. The plaintiff then asked him how long a spot it was badly washed, and where it was washed out, and Hodge replied that if he (the plaintiff) could get over the first place twice the length of his wagon, where it was gullied out at the culvert, he could get along safe enough. The plaintiff then said he was better than a raw hand, and that if others could go safe he did not know why he could not; that he would go down and see, and if he could not get over he could come back, and told Hodge he would go along and overtake Jackman, and if he found trouble Jackman would help him; that the plaintiff drove on after Jackman, but Jackman drove faster than the plaintiff, and had got nearly or quite down the hill when the plaintiff got near the culvert where the plaintiff stopped; that when the plaintiff got in sight of the place at the culvert which Hodge had told him if he could get over he could get along safe enough, he stopped a few rods before he got to it, and leaving left his team went and examined, and concluded by throwing in a few sticks of wood that lay there he could get along safely; that he did so, and went back and got his horse, and passed over that gullied place safely, without any difficulty or trouble, and drove on a considerable dis-

tance beyond safely. For some few rods immediately below this
gullied place at the culvert it appeared that the road was nearly
level and smooth, and not washed, nor in any way injured, and
just beyond this level place at the culvert, the plaintiff's evidence
tended to show there was a knoll, or swell of land, which ob-
structed the view so that the surface of the road below, along
down where it was injured, could not be seen for a considerable
distance by one standing at or near the culvert, and there was
evidence on the part of the defendant tending to show that it could
be seen from there most of the way.

It appeared that after passing down over the culvert some two
or three rods the road was from there down the hill constructed
very narrow with high banks each side and a rather shallow ditch
along by the sides of the road next to the banks, and the plaint-
iff's evidence tended to show that he did not observe that the road
was washed or gullied out along down the hill below the place at
the culvert till he got down between these high banks, and that it
was then impossible to turn his team around, the road was so
narrow.

The evidence tended to show that after the plaintiff had passed
down some fifteen or twenty rods below the culvert he was thrown
from his wagon, his wagon broken, and he thereby received a
severe bodily injury, in consequence of the insufficiency of the
road there, occasioned by the rain as above stated.

No question was made by the defendants' counsel but that the
injury was occasioned by such insufficiency and want of repair of
the road.

There was no evidence that the defect or want of repair at that
bad place, at or near the culvert, in any way caused or contributed
to the accident or injury, and it was not claimed by the defend-
ants' counsel that it did.

The evidence on the part of the plaintiff tended to show that
Hodge did not tell him that the road was bad or gullied, or
dangerous beyond, or below that place by the culvert, and the
evidence on the part of the defense tended to show that Hodge
did not tell the plaintiff that, if he could get over the place at the

culvert twice the length of his wagon, he could get along safe enough.

There was evidence that the selectmen were duly notified of the injury and claim of damages within the thirty days as required by statute.

The defendants' evidence also tended to show that the road in question was a road of not very great amount of travel, that it was used or traveled by those residing within the highway district in which it was situate and by persons coming into the district.

The evidence on the part of the plaintiff from witnesses who examined the road in question after it was injured, and before it was repaired, tended to show that two men, with a yoke of oxen and the necessary tools, could have repaired it in two or three hours, and some testified in three or four hours with that amount of help and tools, so as to have made it *reasonably safe* for travel with teams.

The defendants' evidence tended to show that it could not have been repaired in that length of time with that help.

It appeared that the plaintiff had been for many years previous to the injury to this road well acquainted with the road, and had traveled it many times.

The defendants' counsel requested the court to charge the jury:

1. That if they believed the road in question was so gullied and washed by the showers of Sunday night, as to be rendered unsafe for the passage of such a team and cart as the plaintiff drove, and that the plaintiff was notified by Hodge that it was so dangerous and unsafe for him to attempt the passage, (although they should believe that Hodge at the same time told him that if he could get over twice the length of his wagon through the gully at the sluice-way, he could go safely enough,) yet, if the plaintiff said, as he testified he did, that he was better than a raw hand at driving and thought if the rest could go over the road he could, at any rate he would go down and see, and if he could not go he could come back, he was acting upon his own judgment and could not recover.

2. That if the plaintiff had reasonable grounds to believe or suppose that the road was unsafe and dangerous, he was guilty of negligence and want of care in venturing upon it, and could not recover.

3. That although the jury should find that Hodge told the plaintiff that if he could get over one place, meaning the sluice-way, of twice the length of his wagon, he could go safely enough, the road being in fact dangerous and unsafe from the effects of the showers of the previous night below that point, the town is not bound by any such declaration, nor responsible for any result of it.

4. That if the surveyor had not sufficient time after having notice of the condition of the road with the means at his immediate command, to put the road in a reasonably safe condition before the time when the plaintiff passed over it, the town was not in fault, and the plaintiff could not recover, even if he had no notice at all that the road was out of repair.

5. That the town was not bound to make any efforts at repairs if they had not time to put the road in *good repair ;* and were not bound to begin repairs until they could continue the work to completion ; and no person with notice of the condition of the road had a right to attempt the passage until it was completed.

6. That the town can not be bound by any expression of opinion by Hodge, as to the possibility of passing any part of the road safely, when the plaintiff was at the same time notified by Hodge that the road was unsafe, and rendered so by a sudden shower of the previous night.

7. That the town is not bound by any expression of opinion by Hodge under the circumstances, that the road could be gone over safely.

8. If the plaintiff had notice that the road was out of repair, unsafe and dangerous, and had been rendered so by a sudden shower of the previous night, he could not recover for any injury received in passing over it, although the town had unreasonably neglected to repair it.

9. That the road in question being only a neighborhood road with little travel upon it, the town was not bound to that degree of diligence in putting it in repair from the effects of a sudden rain, that it would be if it were a thoroughfare, or a road extensively used.

The defendants' counsel made only two questions in arguing the case to the jury :

1. Whether the town or highway surveyor had had time to repair the road so as to make it reasonably safe for travel between the time the surveyor had notice it was out of repair and the time the plaintiff came along and passed over it.

2. Whether the plaintiff was wanting in common and ordinary

prudence in traveling it, after such notice as he had of its condition; insisting to the court on the points of law presented by the written requests above stated.

The court did not charge in accordance with the defendants' first request, further than is hereafter stated, but among other things told the jury, as to the question whether the town could be made liable in case of such sudden injury to the road, that a case of sudden injury to a highway, as this case, was an exception to the general rule as to the liability of towns; that in this case the plaintiff can not recover, unless the town is in fault in not repairing the road, between the time Hodge had notice of its condition and the time the plaintiff went over it, at the time of the injury complained of; that the injury to the road in this case was so sudden that the town can not be made liable, and the plaintiff can not recover, unless the jury find that the highway surveyor Hodge, with the force or means at his immediate command and at his control, could have repaired the road so as to make it *reasonably safe* for travel after he had notice of its condition, and before the plaintiff passed over it the Monday evening on the occasion in question.

The court told the jury that in determining this question it was proper to consider the power given by the statute to a highway surveyor to call out a force to repair a road in case of a sudden injury to it, in order to enable him to discharge the duty imposed upon him by the statute in such cases of sudden injury to a highway in his district, and the court read to the jury the sections of the statute imposing the duty on highway surveyors, and giving them the power to call out the inhabitants to repair sudden injuries to the highway, and told the jury it was the duty of Hodge in this case, after being informed that the road was out of repair, to go immediately, as soon as practicable, about repairing it, with such force as he could raise under the power given him by the statute alluded to; that if the highway surveyor was in fault in this respect, it was the fault of the town. That on this point in the case it was a question for the jury to find from the evidence whether Hodge, with the force and means at his command and within his control, could have made the necessary repairs, so as to

have made the road reasonably safe for travel after he was informed of the bad and unsafe condition of the road, and before the time the plaintiff went over it. That by *reasonably safe for travel* the court did not mean the very best condition and the most thorough and complete state or condition that it was possible to put the road in, but such a reasonable state of repair as would answer the requirements of the law as to sufficiency of the road.

The court further told the jury that there might be cases of extreme emergency in the private business of a surveyor that would justify him in delaying the immediate repair of a road in case of a sudden injury to it, but that he would not be justified in postponing it for his convenience for any ordinary business, such as planting potatoes. The court further told the jury that if the highway surveyor was in fault in this case in not commencing the repairs, or making efforts to do so as soon as he ought, still the plaintiff could not recover unless they should find that he had time, after he knew of the bad and unsafe condition of the road, with the force and means at his command and control, to complete the repairs so as to put the road in a sufficient state of repair to be reasonably safe for travel, before the time of the accident to the plaintiff; but if they so found, it made out this point for the plaintiff. The court also charged the jury agreeably to the defendants' *fourth* request. The court did not charge according to the *fifth* request of defendants, except as heretofore and hereafter stated.

On the other points involved in the defendants' requests, the court charged in accordance with defendants' second and eighth request, except the court added that if the jury found that Hodge told the plaintiff as to the condition of the road only what the plaintiff's testimony tended to show, and that Hodge told him that if he could get over the place that was gullied at the culvert he could get along safe enough, as the plaintiff's evidence tended to show, and the plaintiff had no reason to suppose and did not suppose that the road was unsafe or dangerous beyond that spot at the culvert, the mere fact that the plaintiff supposed it was unsafe at that place at the culvert would not prevent his recovering if the case was otherwise made out for the plaintiff, as it was not

claimed on the part of the defense that that defect in the road at the culvert caused, or had any agency in causing, the accident or injury complained of; but if that defect in the road had caused the injury, or contributed to it, the plaintiff could not recover at all, in any view of the evidence.

The court charged agreeably to the first request, omitting this paragraph: "although they should believe that Hodge at the same time told him that if he could get over twice the length of his wagon through the gully at the sluiceway, he could go safely enough."

The court further told the jury that if the plaintiff was wanting in common or ordinary care, or was guilty of negligence, and such negligence or want of care aided in causing, or contributed to, the accident that resulted in the injury the plaintiff sustained, he could not recover, whether the town or highway surveyor was in fault or not in not having repaired the road; and that the defendants claimed that the plaintiff was guilty of such imprudence in traveling, and in attempting to travel the road in question in the condition it was, and with the means of knowledge and the information he had of its condition, and told the jury that if he was, he could not recover; and that if Hodge told the plaintiff in reference to the road what the evidence on the part of the defendants tends to show he did, or substantially that, that the plaintiff in traveling the road did so at his own risk, and can not recover; and that if Hodge did not tell him so, but told him as the plaintiff's evidence tended to prove that he told him, or substantially that, but did not tell him that if he could get over the gully at the culvert twice the length of his wagon he could get along safe enough, then the plaintiff traveled the road at his own risk and can not recover; that in either case it was such imprudence on the part of the plaintiff as prevents his recovering of the town, even if the town were in fault in not repairing the road, and could have done it before this accident; but that if they found that Hodge told the plaintiff only as the testimony on the part of the plaintiff tends to show, and that on the plaintiff inquiring of him how long a space was washed out, and where it was, and Hodge replied that if he could get over the place at the culvert

twice the length of the wagon he could get along well enough, it would be a question for the jury to find from the evidence, whether under all the circumstances bearing on the point, the plaintiff was wanting in common or ordinary prudence in traveling or attempting to travel the road, considering the team and kind of wagon and load he had, and the information and means of knowledge he had as to the condition of the road. If the jury found that he was wanting in such prudence, he could not recover; but that although it might be imprudence to attempt to pass the place at the culvert, that would not of itself prevent the plaintiff from recovering, as it was not claimed that the insufficiency or want of repair of the road at that place had any agency in producing the injury or accident; that if Hodge told the plaintiff as to the road only what the plaintiff's evidence tends to show, and in reply to the plaintiff's question how long a space was washed out, and where it was, and Hodge replied that if he could get over the place at the culvert twice the length of his wagon he could get along safe enough, it might have some tendency to show that the plaintiff had reason to suppose that the road beyond that place was not unsafe or dangerous, but that it was not conclusive.

As to the third, sixth and seventh requests, as to the town not being bound by Hodge's statements that if the plaintiff could get over the place at the culvert twice the length of his wagon he could get along safe enough, and as to the town not being bound by Hodge's opinion on that subject, the court told the jury that the town was not bound by such statements of Hodge or Hodge's opinion on that subject, and that its only effect was upon the question whether it was imprudence in the plaintiff to travel the road after the information he had as to its condition; that as the town relied on the information Hodge gave to the plaintiff as tending to show such notice to the plaintiff of the condition of the road as to render it imprudent for the plaintiff after that to attempt to travel it, it was proper for the jury to look at all he said on that subject, in order to determine what the notice was, and to what extent it apprised the plaintiff of the real condition of the road, and that it was only in this point of view that what Hodge said, about getting along safe if he could get over the place at the culvert, had any effect in favor of the plaintiff.

In the course of the charge the court called the attention of the jury to the evidence on the different points so far as to apply the charge to the evidence. The court did not charge according to the ninth request of the defendants. In all other respects the court charged fully upon all branches of the case.

The defendants' counsel excepted to the charge on the points presented by the defendants' requests so far as on those points it varied from said requests, and to the refusal to charge as requested so far as the requests were not complied with.

*C. W. Clarke* and *D. C. Denison*, for the defendants.

We submit that the court was wrong in their construction and application of the statute, (Gen. Sts. 196, § 18,) and insist that a highway surveyor, in dealing with a case which falls within the scope of this act, may of right and in complete fulfilment of his duty under the law, exercise some discretion and consult to a certain extent his own judgment in view of the circumstances of the particular case, in determining the question whether he will proceed at once to call out the district and commence repairs immediately. The court charged the jury in effect that if the surveyor did not *immediately* take steps to call out the district and proceed *immediately* with repairs, the town was in fault for not having the road in repair when the plaintiff passed over it. This was error. The court should have charged according to the ninth request.

This was what is commonly called a neighborhood road. It was a cross road. It was seldom traveled by anybody except the inhabitants of that highway district. Towns are not obliged to keep such roads in so perfect state of repair as would be required in the case of a main thoroughfare, a road largely and constantly used ; and by anology a town ought not to be holden to that degree of diligence in putting a road of that sort in repair from the effects of a sudden flood. The defendant was entitled to a more explicit and unqualified compliance with the second request. *Folsom* v. *Underhill*, 36 Vt., 580.

*R. McK. Ormsby* and *A. M. Dickey*, for the plaintiff, cited *Richardson* v. *R. & W. Turnpike Co.*, 5 Vt., 580; *Hunt et ux.*

v. *Pownal*, 9 Vt., 411 ; *Kelsey* v. *Glover*, 15 Vt., 708 ; *Allen* v. *Hancock*, 16 Vt., 230 ; *Rice* v. *Montpelier*, 19 Vt., 470 ; *Cassedy* v. *Stockbridge*, 21 Vt., 391 ; *Gassett* v. *Andover*, 21 Vt., 342.

The opinion of the court was delivered by

Steele, J. It is agreed that the plaintiff while traveling over the defendants' road met with the accident and suffered the injury he complains of and that the accident was occasioned by the dangerous condition of the road which was caused by a sudden freshet. The true issues in the county court, as the case presented itself upon the evidence, were, first, was the town in fault for not having put the road in repair after the freshet and before the accident; and, secondly, did a want of ordinary prudence on the part of the plaintiff contribute to cause the accident.

I. The rules of law applicable to the first issue were settled when this case was heard at the Orange term of the supreme court in March, 1866, upon exceptions reserved at a former jury trial. That decision has not been reported, but its grounds were briefly stated in writing by Kellogg, J., and that statement, which was left with the clerk, we now have before us. It is as follows: " The charge to the jury required the jury to find that the highway surveyor was in fault if they should find that two men with a yoke of oxen could have repaired the road in two or three hours, so as to make it passable ; but we think this was not the correct test upon this part of the case. The question whether the surveyor was in fault or not depended we think on the question whether he (the surveyor) by diligently using the means at his command or within his reach, could have put a force immediately upon the road, which was competent to make the necessary repairs after the injury to the road and before the accident happened ; or, in other words, whether the surveyor could, with the means at his control, have made the repairs within the time mentioned, and not whether two men and a yoke of oxen could have made them within the same time." For the error in this respect, the cause was remanded for a new trial. The new trial has been had and exceptions have been again saved to the charge of the court upon

this as well as upon the other branch of the case. The instruc-
tions of the court to the jury upon this branch of the case were,
it must be conceded, in most respects, in strict accordance with
the views expressed by the supreme court at the former hearing.
The county court properly recognized the fact that under such
circumstances as this case developed, the surveyor would not be
put upon his diligence to make the repairs until he had either
knowledge or notice that the road had been injured so as to re-
quire repairs, it not being claimed that the freshet was itself so
extraordinary as to amount to a notice that the road would need
repairs, or that the dangerous condition of the road had existed
long enough to charge the town officers with fault in not having
discovered its condition without notice. The substance of the
charge upon this subject was, that after the surveyor had notice of
the unsafe condition of the road, it was his duty to proceed "im-
mediately as soon as practicable" to repair it "with the force and
means at his immediate command and at his control," and that if
by so doing he could have put the road in a reasonably safe con-
dition for travel before the time when the plaintiff passed over it,
the town would be liable for the plaintiff's injury unless the
plaintiff failed to make out that the happening of the accident
was in no part the result of his own want of ordinary prudence.
So far the ruling of the county court was, we think, such as the
case required. It is true, as remarked by the judge in that court,
that emergencies might arise which would excuse the surveyor
from proceeding immediately to making repairs, but no such
emergency was shown in this case. It is not claimed that he
would be excused from making the repairs in order to finish
planting his potatoes. The only other excuse urged is that the
work could not have been completed that day, and that he there-
fore thought it politic to delay commencing the work until the
next. But the jury have found that the work could have been
completed on that day; that the surveyor with the means at
his command might, after the notice and before six o'clock in
the afternoon of that day, that being the hour when the accident
occurred, have put the road in a reasonably safe condition.
The verdict of the jury upon the charge as given, establishes

that this excuse, that the work could not be completed that day, was not true in fact, because the plaintiff was suffered to recover only upon the ground that the repairs might have been completed before the accident, and the accident occurred that day. There would be no error therefore on this point, even if such an excuse for delay, if true, would be sufficient. We have no hesitation, however, in saying that the mere fact that the repairs could not have been completed on the same day the notice was given, whether it was given in the morning as the plaintiff claimed, or not until noon as the defendant claimed, would not alone be enough to justify the surveyor in waiting until the following day to commence what the statute requires to be done forthwith. It is quite easy to conceive of injuries to a highway or to a bridge of such a nature as would justify a surveyor, after first fencing up the road, in delaying the actual commencement of repairs for more than half a day. That time might be needful to prepare to work to advantage. But it would be very dangerous for the court to attempt to establish any rule limiting or qualifying the immediate duty imposed by the statute upon the officer of the town. The language of the statutes (Gen. Sts., 195, § 18,) should, of course, receive a reasonable construction, and such a construction we think was given when the court told the jury that the repairs should be " made immediately as soon as practicable." The fact that this was a " neighborhood road" and not so much traveled as a great public thoroughfare, does not at all exempt it from the operation of the statute. The lack of promptness might be more disastrous in one case than in the other, but in either case the probable consequences of delay are so serious that the surveyor should proceed immediately to restore the road to a safe condition. The amount of travel the road accommodates is always a proper element of consideration upon the question of what is a condition of reasonable safety, but a sudden injury, when it renders any public highway dangerous for travel, should be repaired as soon as practicable. Upon the question whether the surveyor had means at his command to complete the repairs before the accident, the court very properly called the attention of the jury to the means which the law places in his control by

giving him authority to call out the inhabitants to aid him, and he read them the section of the statute relating to that subject. It is urged that in the absence of any explanation from the court, the jury would be apt to understand the statute as it reads, and thus interpret it with too much literal strictness. Whatever danger there might be in this respect, was, we think, effectually prevented by the ruling of the court that the work was to be done as soon as practicable. It cannot be urged that the statute was not to be considered on this question by reason of any impossibility of giving the six hours notice, because if the jury found the notice was given to the surveyor in the morning, he could have given six hours warning and still have had aid from the inhabitants for nearly half a day. We find, therefore, no error upon the first branch of the case.

II. The questions upon the branch of the case relating to the plaintiff's prudence, arise upon the legal effect of the information as to the condition of the road which was conveyed to the plaintiff before the accident, assuming that the information was such as the plaintiff claimed it was. That information came from the highway surveyor. The giving of it was not, however, such an official act as to make the town in any way responsible for its correctness. It was not in the power of the surveyor, if he had attempted it, to make any statements to travelers that the road was safe, as agent of the town. The only importance of the fact that the information came from the surveyor is in the fact that it would be less imprudent for the plaintiff to rely upon information from a party whose business it was to know about the road, than upon information from a person whose knowledge upon the subject might be merely casual. The county court gave it no importance beyond this. The plaintiff was informed that the road was dangerous at the culvert. If, after this, he had received an injury *there* by an attempt to pass the road, he probably could have made no complaint of the town. In traveling over a place he knew to be thus dangerous he took the risk upon himself. But he passed the culvert safely. The same information which warned him of danger at and near the culvert, assured him if he could pass there he would have no trouble beyond. In passing beyond he met with

30

the accident he complains of. Suppose no information had been given the plaintiff and he had managed to pass the culvert safely, the jury might have thought that ordinary prudence required him, on finding so bad a place there, to venture no further; but having been informed by a person on whom he might reasonably rely that, if he could get by that place he would have no further trouble, they might well conclude that it was not imprudence for him to proceed. The only effect, therefore, of this information, *so far as this injury was concerned*, was to lessen the force of the warning which the danger at the culvert would naturally give, and could only be weighed by the jury in the plaintiff's favor upon the question of whether he was in the exercise of ordinary prudence in traveling beyond the culvert. This we understand to be precisely the effect which the county court gave this evidence, if the jury should find the information was such as the plaintiff claimed, and it is upon the plaintiff's testimony that this point is here made. The fact that the plaintiff was notified of the danger he escaped at the culvert, could not prejudice his claim for damage for an injury beyond there, at a point where he had notice from precisely the same source that he could pass safely.

Judgment affirmed.