## City of Lawrenceburg v. Lay.

(Decided September 26, 1912.)

### Appeal from Anderson Circuit Court.

1. **Streets—Right of City to Obstruct by Barriers.—**When it is deemed advisable by the city authorities so to do, for the safety, convenience and comfort of the inhabitants of the city and the public generally, a street may be temporarily obstructed by suitable barriers to preserve peace, and quiet and prevent disorderly crowds from assembling, and this power the city may exercise independent of any ordinance, whenever in the judgment of the authorized city officials the preservation of order demands that it should be done.

2. **Streets—Obstruction of by City—State of Facts.—**A city on special occasions, when the streets were crowded, was in the habit of closing a blind alley by stretching a rope across the mouth of the alley, and on a line with the curb, between the street and the sidewalk, to prevent disorderly persons from congregating in the alley. A runaway horse, in attempting to pass under the rope, caused it to break and come in contact with a traveler on the sidewalk: Held, that the city was not liable in damages to the traveler for the injuries received.

F. R. FELAND, E. H. GAITHER for appellant.

EDWARDS, OGDEN & PEAK, L. W. McKEE and W. H. MORGAN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In this suit by the appellee to recover damages for personal injuries sustained by reason of the alleged negligence of the appellant city in placing and permitting to remain in one of the streets an obstruction, the jury assessed her damages at $500.00, and from the judgment entered accordingly, the city prosecutes this appeal.

The following facts appear from the uncontradicted evidence: That leading off from the main street in the city was an alley about twenty-five feet wide and some two hundred and twenty feet deep. This alley was what is called a "blind alley," and was used as an entrance to the back yards and stables of the property owners abutting on it, the rear or back end of the alley being closed. That on public days when large crowds were in the city, noisy, drunken and disorderly persons were in the habit of congregating in this alley, to the great

annoyance and disturbance of the property owners and their presence endangered the safety of persons passing on the street on which the alley opened. That to prevent the assembling of this class of people in the alley, the city directed, or at least permitted the police officers to stretch a rope across the mouth of the alley by tying it to two telephone posts that stood on each side of the alley. That these poles were on a line between the sidewalk and the street, and as the rope was stretched parallel with the sidewalk, it did not, of course, interfere in any way with the customary use of the sidewalk or the street, but it served to warn people that the alley was closed, and to prevent the taking of horses in it from the street. That the rope was large and heavy, and was suspended about five (5) feet from the ground, and that it had been the custom of the city to close the alley in this manner on public days for eight or ten years previous to the injury complained of. That on the day appellee was injured there was a large crowd in town to see a circus, and the rope was placed in the usual manner and as above described, to prevent the use of the alley. That during the day and while appellee was walking on the sidewalk in front of the mouth of the alley, a horse that had been left standing alone in the street and that was kept in one of the stables in the alley, ran into the alley, and in passing under the rope, it was caught in some way by the saddle on the horse and pulled loose from its fastening, or broke, and when so broken or detached, it struck with considerable force the person of appellee inflicting the injury of which she complains. It is not claimed by the appellee that the manner of attaching the rope to the posts was negligent, or that the rope was not of sufficient size and strength for the purpose intended, or that it could not be plainly seen by any person using the sidewalk or the street or, that if it was allowable to close the alley in this manner the rope and the manner of its suspension was not in every respect suitable. But it is contended for the appellee that maintaining the rope in the manner described constituted an obstruction of the street, and the city was, therefore, guilty of negligence in failing to keep its streets and public ways in reasonably safe condition for public travel, and that this negligence was the proximate cause of the injury received by the appellee, and so the city should be made to respond in

damages. This was the view of the matter taken by the trial judge, who instructed the jury in substance that they should find for appellee if they believed from the evidence that stretching the rope in the place and manner it was, rendered the street or sidewalk at said place in an unsafe or dangerous condition, and that while appellee was walking along the sidewalk exercising ordinary care for her safety, a horse ran under the rope, causing it to become unfastened and to strike and injure her. On the other hand, it is argued for the city that it was not guilty of actionable negligence in closing the alley by means of the rope, and that even if its acts in this respect should be treated as negligence, this negligence was not the proximate cause of the injury, and so there should be no recovery.

There is much force in the argument of counsel for appellant that the act of the city in maintaining the rope was not the proximate cause of the injury, as the rope did not in any manner obstruct the use of the street or sidewalk in the customary manner of their use, although if an attempt had been made to go from the street to the sidewalk, or from the sidewalk to the street, at the place where the rope was suspended, it would offer in some measure an obstruction. The rule is that to constitute negligence in cases like this where concurring independent causes produce accident, the injury complained of must be one that under the circumstances might have been reasonably foreseen or anticipated by a person of ordinary prudence to flow from or be the natural or probable consequence of the first negligent act. Sydnor v. Arnold, 122 Ky., 557; Louisville Home Telephone Co. v. Gasper, 123 Ky., 128. And so, it is argued that as the rope was so placed as not to obstruct the customary travel, the city in the exercise of reasonable prudence could not have anticipated that anything would come in contact with this rope in so violent a manner as to cause it to become unfastened or break, and, hence, should not be held liable for the act of the run-away horse that caused the rope to break or become unfastened.

But, passing this question as not necessary to a decision of the case, we are of the opinion that the city is not liable for another reason. Keeping in mind that the city is sought to be held responsible on the sole ground that in maintaining the rope it failed in its duty

to keep its streets in safe condition for travel, let us see how the case stands.

While it is the general rule that a city is under a duty to keep the streets and public ways accessible for travel and free from obstructions that might cause injury, this general rule is not without exceptions. In the safe, convenient and orderly conduct of its affairs, every city frequently finds it necessary to obstruct or to permit others to obstruct its streets and public ways and to make them unfit and dangerous for use and to partially or completely close parts of them to public travel. Frequent and daily illustrations of this are seen when streets and other public improvements are being constructed or reconstructed, and when buildings abutting on streets are being erected or repaired. But no one would contend that the city was liable for thus temporarily closing or obstructing, or permitting others to temporarily obstruct or close its streets if reasonable barriers or lights were placed to give notice of the obstruction or the unsafe condition of the streets. It has also been held permissible for a city to erect barriers across the streets during fires or when a parade is in progress, or when it is necessary to prevent the noise of passing vehicles from endangering the life of a sick person in a house adjacent to the street, or to protect grass plots. Anderson v. Mayor, 2 Pennewells, Delaware, 28; City of Paducah, v. Simmon, 144 Ky., 640; Simons v. City of Atlanta, 67 Ga., 618, 44 Am. Rep., 739. In this last mentioned case, the court said:

"The right temporarily to obstruct a street springs from reasonable necessity, and is limited by it, and those who exercise the right must so conduct themselves as to discommode others as little as is reasonably practicable, and remove the obstruction or impediment within a reasonable time, having regard to the necessities and circumstances of the case; and when they have done this, the law holds them harmless. * * * It is, however, a safe and reasonable rule to declare that so long as the alleged obstruction is temporary and reasonable in its character and is intended for the public safety and convenience, it is no cause of complaint."

As there can be no doubt of the right of a city to obstuct temporarily the use of its streets under certain circumstances, if it employs such means of obstruction as are reasonably suitable and sufficient to warn travel-

ers of the fact that the obstruction exists, we think the principle allowing the temporary obstruction of streets for the safety, convenience and comfort of the inhabitants of the city and the public generally, may well be extended to embrace the right to temporarily close by suitable barriers a street or other public way when it is deemed advisable by the city authorities so to do to preserve peace and quiet and prevent disorder.    And this power the city may exercise independent of ordinance, whenever in the judgment of the authorized city officials the peace, quiet and order of the city demands that it should be done.   Of course, when the city undertakes to obstruct or permit the obstruction of a street by barriers, the barriers so erected must be reasonably sufficient to give notice that the way has been closed or else, as held in City of Glasgow v. Gillenwater, 113 Ky., 140, will be liable in damages to any traveler who in the exercise of due care comes in contact with a barrier of such character as not to give sufficient warning of its presence. Here the barrier erected was sufficient in size and form to give notice of its presence, and if appellee, in the day time, in attempting to go from the sidewalk to the street at the place where this rope was suspended, had come in contact with it, and suffered injuries, we think it clear the city would not be liable; and this being so, it should not be made liable because a run-away horse  came in contact with the  rope and as a consequence appellee was injured.

· We think the city in the exercise of its police power had the undoubted right to prevent the assembling in the alley of the disorderly crowd who made it a habit on public days to congregate there to the annoyance and disturbance of adjacent  property  owners, as well as persons passing on the street.  Having then the right to close the alley on these occasions to the class who frequented it, the only question is, did it have the authority to do it in the manner described.

Of course, the city might have closed the alley by the use of a gate, or it might have  stationed  a policeman there to prevent the assembling of disorderly crowds, or possibly it might by proper procedure have closed the alley entirely as a public way; but the fact that it might have prevented the use of the alley by disorderly persons in any one of these ways did not prohibit it from adopting the means it did.

The method adopted was effective, as well as reasonably safe. The rope did not interfere with the ordinary and usual use of the sidewalk or street, and under the circumstances cannot be considered such an obstruction as would make the street unsafe for public travel.

The motion for a peremptory instruction should have been sustained, and, if there is another trial, and should take the case from the jury and enter a judgment the evidence is the same as in this record, the trial judge dismissing the petition.

Wherefore, the whole court sitting, the judgment is reversed, with directions for a new trial in conformity with this opinion.