BERNARD F. SHANLEY *v.* DANIEL HURLEY.

October Term, 1921.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed May 17, 1922.

*Bailment—Duty of Agister to Fence—Negligence—Questions for the Jury—Proximate Cause.*

1.  An agister, in the absence of a special contract affecting his duty, is required to restrain animals, placed in his care as agister, within his own inclosure, by lawful fences.

2.  Plaintiff's horses, which were in charge of an agister, escaped through a defective fence into a public highway and thence wandered onto a railroad track, 1,500 feet from the opening through which they had escaped, and were killed by a train. In an action against the agister for negligently causing the death of the horses, defendant claimed that the defect in the fence was caused by the acts of third persons, committed 11 days prior to the time the animals were killed, without his knowledge. *Held,* that whether, under the circumstances, defendant was negligent in not having discovered the defect in time to prevent the escape of the animals, and whether, if negligent, their going onto the track and being killed was the natural and probable consequence of such negligence, were questions for the jury.

3.  Where a defendant's negligence is established, he will not be excused therefrom by an intervening negligent act of a third person, if, according to the usual experience of mankind, it was likely to be the result of the original negligence; but where the intervening negligence is an entirely independent and unrelated cause, and of itself sufficient to stand as the cause of the injury, it will ordinarily be regarded as the proximate cause of the injury and the defendant's negligence as the remote cause.

4.  Where an agister negligently permitted animals in his charge to escape through a defective fence, and they wandered onto a railroad track and were killed by a train, and the facts were such that fair-minded men might differ as to whether the

act of the railroad was such an intervening, efficient cause as prevented the negligence of the defendant from being a proximate cause, the question of proximate cause was for the jury.

ACTION OF TORT for negligence of an agister in failing to maintain a sufficient fence, through lack of which animals in his charge escaped and were killed by a railroad train. Plea, the general issue. Trial by jury at the March Term, 1920, Chittenden County, *Fish,* J., presiding. Verdict directed for the defendant. The plaintiff excepted. The opinion states the case. *Reversed.*

*M. G. Leary* and *Charles F. Black* for the plaintiff.

*Ezra M. Horton* and *Warren R. Austin* for the defendants.

WATSON, C. J. At the close of plaintiff's evidence, a motion was made by defendant for a directed verdict, assigning several grounds therefor. The motion was granted, the court stating specifically, as the reason for so doing, that it was an essential element of the plaintiff's case to show that the mare and colt were killed without any negligence on the part of the railroad company, without which showing there was no question for the jury. On exception to this ruling, the case is here.

The tendency of the evidence, stated most strongly in favor of the plaintiff, was, that the plaintiff and the defendant entered into a contract whereby the latter was to pasture the former's mare for the season of 1918, it being understood by the parties that the mare was with foal, and it being understood and agreed that defendant would pasture, keep, and care for the mare and colt, receiving compensation therefor; that pursuant to this contract the mare and colt were being pastured by defendant at the Oak Ledge farm, so-called, southerly of Burlington and near Queen City Park, the pasture being bounded easterly by the right of way of the Rutland Railroad, and southerly by a public highway; that the fence around this pasture, except on the side next to the railroad, was for the defendant to build and maintain; that on November 14, 1918, the mare and colt escaped from the pasture into the public highway, wandered about more or less, and went upon the track of the railroad company, where they were both killed by a passing train; that before and on that day a part of the fence inclosing defendant's pasture, on its

southerly side along the highway, was down and in very poor
condition, at which place the mare and colt escaped from the
pasture; that on the night of November 3rd, eleven days prior
to the time when the two animals were killed, an automobile,
being run over the public highway, became stuck in the mud a few
feet from the place where the animals thus escaped; that when
the automobile was so stuck, those persons having it in charge
took boards and a post from the fence inclosing the pasture, to
use in prying out the car, making and leaving a large opening
or hole through the fence, thereby creating the defect complained
of, by reason of which the horses in the pasture could and did
make their escape; that horses, being there kept, were seen out
of the pasture and straying on the highway, and in the neigh-
boring fields, and in Queen City Park, several times prior to the
day when the mare and colt were killed; also on the latter day
they were seen out of the pasture, straying in the fields and in
the highway.

[1, 2]   Whether by the terms of the contract of bailment,
the duty resting on the defendant was greater than that gen-
erally devolving by law on such a bailee, we do not consider (see
*Goslant* v. *Calais,* 90 Vt. 114, 96 Atl. 751).   The care required
of the defendant in the discharge of the bailment in question,
without any variance of duty by contract from that which the
law imposes, was such as to oblige him to restrain the animals
agisted, by lawful fences, within his own inclosure.   *Sargent* v.
*Slack,* 47 Vt. 674, 19 A. R. 136; *Lucia* v. *Meech,* 68 Vt. 175, 34.
Atl. 695.  It is said, however, that by the tendency of the evidence
defendant's fence, at the place where the animals escaped, was
rendered defective by the acts of third persons, and that there
was no evidence tending to show knowledge by defendant of
such acts, nor to show notice to him of the defect so made, until
after the mare and colt were killed.   In answer to this position,
plaintiff argues that such defect had existed long enough before
the time when they were killed, to charge defendant with fault
in not discovering it in season to prevent the escape of the
animals and their subsequent destruction.   Whether, in the cir-
cumstances shown, defendant should be charged with such fault,
was a question for the jury.   *Clark* v. *Corinth,* 41 Vt. 449;
*Ozier* v. *Hinesburgh,* 44 Vt. 220; *Cross* v. *Passumpsic Fibre
Leather Co.,* 90 Vt. 397, 98 Atl. 1010.   If the finding on this
question be against defendant, then he will be taken to have had

notice of the defective condition of the fence; and the fact that such condition was originally caused by the acts of third persons without the knowledge of defendant, becomes immaterial.

It is said in defendant's brief that there was no reason to expect that horses, escaping from the pasture where these did, would go onto the railroad track; because the railroad in that vicinity was fifteen hundred feet from the opening in the fence, and sunk in so deep a cut that an over-pass or bridge was necessary to cross it at grade of the highway bordered by the fence. But on the question of negligence and proximate cause, this Court has said: "Its proximity has no necessary connection with continuity of space nor nearness of time, but only with that of which the result is the natural and probable consequence in the sense that a prudent man ought to have foreseen it." So in the instant case, the defendant's negligence, if such it was, in not maintaining a legal fence at the point where the animals escaped, was the proximate cause of its natural and probable consequences, and whether their going upon the railroad track and being there killed by a passing train was the natural and probable consequence of such negligence, was a question of fact for the jury. It was not plain enough to be ruled as a matter of law. *Morrisette* v. *Canadian Pac. R. R. Co.,* 74 Vt. 232, 52 Atl. 520; *Place* v. *Grand Trunk Ry. Co.,* 80 Vt. 196, 67 Atl. 545

[3, 4] It is urged, however, that the act of the railroad company in killing the mare and colt, was an efficient intervening cause, not under control of defendant, and so the negligence of the latter, such as it was, was not the proximate cause of the injury. In view of what we have already said, we discuss this point, assuming that defendant's negligence has been established, imposing liability for all injurious consequences flowing therefrom, unless the act of the railroad company constituted an intervening diverting force that made the injury its own. *Isham* v. *Dow's Estate,* 70 Vt. 588, 41 Atl. 585, 45 L. R. A. 87, 67 A. S. R. 691. No claim is made of any prior intervening force. Therefore the horses, when on the railroad track, were there by force of the continued operation of defendant's negligence which set that force in motion. Was this merely a condition on or through which the original negligence of the defendant operated to produce the injurious result? If, in the circumstances, the negligence of the defendant was such, according to the usual experience of mankind, as was calculated to bring on, produce,

or cause the intervention of the subsequent cause of the railroad company's train colliding with the horses on its track, such intervening cause will not excuse the defendant, and the subsequent injury will be held to be the result of his original negligence, on the ground that he is responsible for all the consequences of his wrongful act which are natural and probable, and ought to have been foreseen by him as a prudent man; and the original act of negligence being regarded as continuous in its operation up to the time of the negligent act (if such it was) of the railroad company, for the purpose of fixing defendant's liability, the two acts are treated as concurrent. 22 R. C. L. 138. The case of *Wilder* v. *Stanley*, 65 Vt. 145, 26 Atl. 189, 20 L. R. A. 479, is much in point. There the plaintiff and defendant owned and occupied adjoining pastures. The colts of the plaintiff escaped from his pasture into the pasture of the defendant over a portion of the division fence which it was the duty of defendant to maintain. From defendant's pasture they passed into the pasture of one Willey. The referee found that while the colts were in the latter pasture, one Tracy, without authority from either plaintiff or defendant, attempted to drive them back from there into plaintiff's pasture, and in so doing one of the colts ran against barbed wire fence between the pasture of Willey and that of defendant, and was so injured that it died. This Court said the escape being through the negligence of defendant, that negligence accompanied the colts while roaming, by reason of it, away from plaintiff's pasture; that since Tracy was not the servant of the plaintiff, if he voluntarily negligently started up or drove the colt at the time it was injured, Tracy's negligence would be concurrent with that of defendant in causing the death of the colt; that in such a case both or either of the wrongdoers were liable for the injury caused by their concurrent negligence.

On the other hand if, in the sequence of events between the defendant's negligence and the final injury, the act of the railroad company was an entirely independent and unrelated intervening cause, and was of itself sufficient to stand as the cause of the injury, the latter would ordinarily be regarded as the proximate cause and the other as the remote cause. *Atchison, T. & S. R. Co.* v. *Calhoun*, 213 U. S. 1, 53 L. ed. 671, 29 Sup. Ct. 321. But as to whether the act of the company was such an intervening efficient cause as prevented the negligence of the de-

fendant from being a proximate cause of the injury, fair-minded men might differ, and it was therefore a question for the jury, under proper instructions from the court. *Milwaukee, etc., R. Co.* v. *Kellogg,* 94 U. S. 469, 24 L. ed. 256.

The foregoing disposes of the principal and most important grounds of defendant's motion. As to the other grounds assigned, an examination of them shows nothing which changes the effect of the results above reached.

It follows that, on the evidence, the plaintiff was entitled to have his case submitted to the jury, and the ordering of a verdict against him was error.

*Judgment reversed and cause remanded.*