Carroll,
Dec. 1, 1942. } No. 3355.

WILLIS L. NASON *v.* LORD-MERROW EXCELSIOR CO.

*William N. Rogers* and *Rolland R. Rasquin* (*Mr. Rogers* orally), for the plaintiff.

*Sewall, Varney & Hartnett* and *Murchie & Murchie* (*Mr. Hartnett* orally), for the defendant.

BRANCH, J.   Before trial, the defendant moved that the plaintiff be required to elect between the two counts in his declaration.   This motion was denied and the defendant excepted.   The first count alleged the fact that the rolls were dull.   The second count alleged a crack in the metal strap.   As hereinafter appears, the two counts were not inconsistent, but rather supplemented each other.   The motion was properly denied.

The plaintiff was injured while operating an excelsior machine in the defendant's mill.   The essential parts of this machine were the "plate" and the feed rolls.   The plate, so-called, consisted of a steel plate about eleven inches in width, designed to move up and down between wooden supports.   In it were installed a knife and a "scratcher," the function of which was to score the wood which was being manufactured, thus determining the coarseness of the excelsior which was shaved off by the knife.   The wood was held in an upright position and fed into the machine by two feed rolls.   The bearings of the lower roll were stationary but those of the upper roll were attached to a frame, or rack, which was designed to move up and down, the vertical motion being controlled by two cog wheels attached to a shaft some eight to ten inches above the roll.   The motion of the cog wheels could be manually controlled by a handle attached to the right-hand end of the shaft.   This shaft ran through and was supported by two metal "straps" which were bolted to the outside surfaces of the wooden supports of the machine.   When there was a stick of wood in the machine, the upper roll and the rack were held in position by a fifty pound weight operating over a wheel which was also installed on the end of the shaft together with the handle above referred to.   The effect of this weight transmitted through the cog wheels was to hold the upper roll down on the top of the stick in the machine.   Between the upper roll and the plate was a piece of steel about two inches wide and one-eighth inch thick which formed a part of the rack and was referred to as a guard.

Plaintiff's evidence tended to show that he was in charge of eight machines; that about a week before the accident he notified the defendant's superintendent that the feed rolls on four of his machines, including the one in question, were dull, and received a promise that new rolls would be substituted.   He also testified that,

on the morning of the accident, he noticed that the right-hand strap supporting the shaft and cog wheels above referred to, was cracked; that he reported this fact to defendant's superintendent and again called his attention to the dull rolls and was told that both defects would be fixed right away; that in reliance upon these promises, he continued to operate the machine until about ten minutes of four in the afternoon, when he was injured.

His account of what occurred was that, as he approached the machine at this time, he saw that a stick of wood had turned on the upper roll; that he saw it come off between the roll and the plate; that the up stroke of the plate caught it and wedged it with great violence under the guard and that, on the following down stroke of the plate, the knife struck the end of the stick with great force, the effect of which, being transmitted through the cog wheels to the shaft, was to break the cracked strap above referred to, thus allowing the shaft, with its wheel and handle, to fall out toward the plaintiff who was struck in the abdomen by the end of the handle and, as a result thereof, sustained a serious rupture; that there would have been no accident if the rolls had been sharp or if the strap had been sound. These statements, if accepted by the jury as true, made out a case for the plaintiff.

The defendant contends that it could not be found to have been at fault, because "no reasonable person in the position of the defendant could fairly have been expected to anticipate that these circumstances [narrated above] would coincide." This contention is without merit. "It is sufficient if it appears that the negligent act of the defendant would probably cause harm to another, even though the precise manner in which it occurred could not have been foreseen." *Guinan* v. *Company*, 267 Mass. 501; *Bagley* v. *Small, ante,* 107; *Osgood* v. *Railroad,* 83 N. H. 262, 266; *Tullgren* v. *Company,* 82 N. H. 268, 276; *Derosier* v. *Company,* 81 N. H. 451, 462.

Defendant also asserts that "there is no credible evidence of the manner in which the accident happened." In support of this position it is argued that "the plaintiff has so far discredited his testimony on the stand by his previous statements [in his deposition] that no weight can be given to his assertions at the trial." It is said that "in at least eight instances, the plaintiff in his deposition made it clear that he did not know what happened after the stick left the rolls."

The plaintiff attempted to account for the discrepancies between

his testimony on the stand and deposition by the claim (character-ized by the defendant as fantastic) that he was extremely nervous at the time the deposition was taken. "You had me so nerve-rattled-up that I can't tell you whether that was correct or not. I did the best I could." The weight to be given to this explanation was for the jury. Furthermore, the fact that the plaintiff gave on the witness stand a more circumstantial account of how the accident occurred than counsel for the defendant had been able to elicit at the time his deposition was taken, furnished no ground for throwing out his testimony entirely. *Coté v. Company*, 86 N. H. 238, 241. This is especially evident in a case like the one before us where the smashing of the machine and the injury to the plaintiff were not contested.

The claims of the defendant that the plaintiff was guilty of contributory negligence and assumed the risk of the accident, were adequately met by the testimony of the plaintiff that he relied upon the promise of the defendant's superintendent to remedy the defects in the machine. "If it is a reasonable inference from the testimony that the inducing motive of the servant's continuance in the em-ployment was his reliance upon a promise that the dangerous conditions would be remedied, the mere fact that the servant knew of and appreciated the abnormal risk which caused his injury will not warrant a court in declaring that his continuance in the employ-ment rendered him chargeable, as a matter of law, with an assump-tion of that risk or with contributory negligence." 4 Labatt, Section 1347; *Sevigny v. Company*, 81 N. H. 311.

The claim of the defendant that Mr. Fox, to whom the plaintiff claimed to have reported the defects in the machine, was not the superintendent of the mill and not authorized to receive notices of defects or to make promises of repair, is unavailing in view of the evidence that he was the treasurer of the defendant corporation, actively in charge of its business, which gave the plaintiff reasonable grounds for believing that he did have such authority. It is plain that the motions for a nonsuit and a directed verdict were properly denied.

Defendant's exceptions to the court's rulings upon questions of evidence, to the allowance of the argument of plaintiff's counsel, to the denial of its requests to charge, and to the charge, although noted in its brief, were not referred to at the oral argument, and it is not thought that they merit individual notice here. Only those suggesting some apparent difficulty will be considered.

It is sufficient to say that the court's rulings upon evidence have been carefully examined and found to be correct.

The criticisms of the argument of plaintiff's counsel appear to be without substance and furnish no grounds for setting aside the verdict.

By its requests numbers 6 and 7, the defendant sought to have the issue of liability, by reason of the fact that the feed rolls were dull, withdrawn from the consideration of the jury. It is now argued that these requests "were mandatory, since such a long period of time had elapsed since the plaintiff first knew of the dullness of the feed rolls." As above stated, the evidence was that the first promise to change the feed rolls was made a week before the accident, but this promise was repeated on the day of the accident. It is the general rule that "the promise to repair eliminates the assumption of risk for a reasonable length of time" (4 Labatt, M. & S. Section 1349), and the question, what constitutes a reasonable time, was obviously treated by the court as one of fact for the jury. In this there was no error prejudicial to the defendant. In this jurisdiction the rule has been stated more broadly. "The promise of a master to remedy defects or deficiencies in his instrumentalities relieves the servant of his implied assumption of the risk while he remains at work on the strength of the promise." *Sevigny* v. *Company*, 81 N. H. 311. *A fortiori*, under this statement of the rule, it was for the jury to say whether the plaintiff remained at work "on the strength of the promise" made to him by defendant's superintendent.

Defendant's tenth request was as follows: "10. The only duty of the defendant and its agents was to use the care of the average person and not of the prudent person." The court summarized its instructions with reference to negligence as follows: "In other words, negligence is the failure to use as much care as ordinary persons of average prudence would have shown in a similar situation and under the same circumstances." We are now told that "Under the principles laid down in *Frear* v. *Company*, 83 N. H. 64, Request No. 10 should have been specifically given. The references in the charge to 'prudence' were error." In *Frear* v. *Company*, *supra*, a charge which set up "a cautious and prudent man" as the standard, was held to be erroneous. The present instruction is open to no such criticism. It sets up the "ordinary persons of average prudence" as a standard. No fault can be found with this test of negligence and the exception is overruled.

256

Defendant states that requests numbers 14, 15, 16, 17 and 21, call the attention of the court to "factors of material importance to the jury in considering the good faith and reasonableness of the plaintiff in continuing work after his admitted knowledge of certain alleged defects," and that these requests should have been given. It would be more accurate to say that, by these requests, the defendant sought to have the court argue to the jury its view of certain portions of the evidence. These instructions fall within the general rule stated in *Colby* v. *Lee*, 83 N. H. 303, 310, as follows: "The extent to which rules of law shall be given specific application to the claims of the parties and the facts disclosed by the evidence in a given case must be left to the sound discretion of the trial court, provided the jury is 'fully and correctly' instructed." In accordance with this rule, the requests were properly denied.

Defendant's requests numbers 25, 26 and 27, contained statements of law with reference to the issue of assumption of risk which might properly have been given in some cases. In a case like the present, however, where the main issue had reference to the giving of a promise to repair, the instructions in question were unnecessary and might well have been denied upon the ground that they were calculated to give undue prominence to issues of fact which were immaterial to the decision of the case. *Wemyss* v. *Company*, 86 N. H. 587, 592. Defendant's other criticisms of the charge are overruled.

*Judgment on the verdict.*

All concurred.