[L. A. No. 19154. In Bank. Mar. 30, 1945.]

SAM R. MOSLEY, Respondent, v. ARDEN FARMS COM-
PANY (a Corporation), Appellant.

214

Monroe & McInnis for Appellant.

Johnson & Johnson, E. L. Johnson and C. Ashley Johnson for Respondent.

CARTER, J.—Defendant appeals from a judgment awarding damages to plaintiff for personal injuries suffered in a fall when he was dislodged from a tractor which collided with some milk crates owned by defendant. The case was tried before the court without a jury.

The injury occurred in National City on Highland Avenue, a north-south street about 25 feet south of its intersection with 10th Street, an east-west street. Highland Avenue is a paved street. There is a curb along the west side thereof. Adjacent to the curb on the west and parallel therewith is an unpaved strip 8½ feet wide, which is commonly called the parking. Next to the parking is a 5-foot paved sidewalk. Along the west side of the paved sidewalk and between it and the property line there is a 2-foot unpaved strip. The lot fronting on Highland Avenue at the point in question is vacant. A school ground is located on the west side of Highland Avenue commencing at the northwest corner of the intersection of Highland and 10th Street and extending north for a block. A tree stands in the parking about 25 feet south of 10th Street. There is considerable traffic on the sidewalk on Highland Avenue.

Defendant for a year prior to the accident had been in the retail milk business in National City, and during the course thereof, its employees, without authority or right, piled milk crates containing empty milk bottles on the parking about three feet south of the tree. About a month prior to the accident defendant ceased to do business in National City, leaving

about eighteen crates unattended and unguarded at the above mentioned place. The crates were about 2 feet long by 1½ feet wide by 12 to 14 inches high, and were usually stacked 3 or 4 high. The 2-foot strip adjacent to the sidewalk was grown up with weeds and wild oats to a height of 2½ to 3 feet. Some time prior to the accident, according to the findings of the trial court, two of the crates became "displaced, and hidden in the aforesaid growth of weeds in the space between the cement walk and the property line and across the five foot pavement from where the pile of the defendant's crates was kept and stacked. It is not in evidence that any agent of Defendant moved said boxes." The two crates were directly across the sidewalk from the main pile on the parking. Prior to the accident one of defendant's drivers had seen glass from broken bottles on the 2-foot strip or nearby.

The court also found that plaintiff, an employee of National City, while engaged in mowing the weeds along Highland Avenue at the direction of his employer, and using a tractor therefor, drove in a northerly direction "on the cement walk, and at times to put the left wheels of this rubber tired tractor over into the aforesaid two foot space; it is true that while so operating said tractor, plaintiff, in order to avoid the pile of boxes or crates, operated and ran the aforesaid tractor upon one or more of the boxes so hidden in the aforesaid two foot space, and that thereby the aforesaid tractor was suddenly, and without warning, lifted from the ground and tilted at an angle which caused plaintiff to lose his balance, fall from the seat of said tractor and strike his head upon the aforesaid cement pavement."

National City has an ordinance reading "An ordinance prohibiting the displaying for sale, offering for sale, or selling of goods, wares or merchandise of any kind upon any public street or alley within the City of National City, California, and prohibiting *the obstruction of any street* or alley, *or portion thereof,* or the sidewalk's face thereof, within said City, by placing or permitting thereon any signs, boxes, or other thing or article which will in any way obstruct or hinder the use thereof or travel thereon within the limits of said City." The court found that defendant violated the ordinance; that the maintenance by defendant of the pile of crates constituted a nuisance; and that defendant negligently left the crates on the parking and proximately caused the injury to plaintiff.

Defendant concedes it had no right to place the crates on the parking and that it was a trespass and probably negligence to do so, but it urges, that the acts and omissions on its part were not the proximate cause of the accident because the trial court found that it did not move the two crates which caused the accident to the two-foot strip and it is unknown how they got there; that if some independent intervening agency caused them to reach that place defendant is not liable for the reason that the chain of causation was broken; and that the maintenance by it of the pile of crates on the parking was not a nuisance or a violation of the ordinance.

Disregarding the ordinance and the finding by the court of the existence of a nuisance, the trial court was justified in concluding that the defendant was neglient and that such negligence was the proximate cause of the accident. Leaving those crates on the parking for a month or more unguarded, unattended and not properly inspected would be such conduct as would justify a finding of negligence by the trier of fact. Under the circumstances here presented the question of negligence and legal or proximate cause are closely related, assuming the test for both is whether a man of ordinary prudence should have foreseen or anticipated that the two crates might reach the spot where they were located on the two-foot strip. (See Prosser on Torts, pp. 364 et seq.)

It is well settled that one test for determining the issue of negligence is whether a person of ordinary prudence should have foreseen or anticipated that someone might be injured by his action or nonaction. (19 Cal.Jur. 583, 563-4; 1 Shearman & Redfield on Negligence, § 24.) Or as stated in different terms: "Negligent conduct may be either: (a) an act which the actor as a reasonable man should realize as involving an unreasonable risk of causing an invasion of an interest of another; or, (b) a failure to do an act which is necessary for the protection or assistance of another and which the actor is under a duty to do." (Rest., Torts, § 284.) And "The actor should recognize that his conduct involves a risk of causing an invasion of another's interest, if a person, (a) possessing such perception of the surrounding circumstances as a reasonable man would have, or such superior perception as the actor himself has, and (b) possessing such knowledge of other pertinent matters as a reasonable man would have or such superior knowledge as the actor himself has, and

(c) correlating such perception and knowledge with reasonable intelligence and judgment would infer that the act creates an appreciable chance of causing such invasion.'' (Rest., Torts, § 289.) The actor is bound to know ''the qualities and habits of human beings and animals and the qualities, characteristics and capacities of things and forces insofar as they are matters of comman knowledge at the time and in the community.'' (Rest., Torts, § 290.)

Whether or not the test has been met is generally one of fact for the trier of fact. As recently expressed by this court:

''In other words, the actor's conduct must always be gauged in relation to all the other material circumstances surrounding it and if such other circumstances admit of a reasonable doubt as to whether such questioned conduct falls within or without the bounds of ordinary care then such doubt must be resolved as a matter of fact rather than of law.'' (*Toschi* v. *Christian*, 24 Cal.2d 354, 360 [149 P.2d 848].) (See, also, 19 Cal.Jur. 719, 723.)

Looking at the circumstances in the case at bar, we find crates piled three or four high on a parking near a sidewalk without right or authority, and left there for at least a month without regard to the condition of the pile. The sidewalk has considerable pedestrian traffic upon it. There is a school ground nearby. The two crates which caused the accident were directly across the sidewalk from the pile of crates, only five or six feet away. Under those circumstances we cannot say as a matter of law that the trial court was not justified in deciding that defendant as a person of ordinary prudence should have anticipated or foreseen that the crates might become scattered, that some might fall off of the pile during the course of time, and possibly on the sidewalk, from whence a passerby might naturally push them aside to their ultimate resting place, or that they might be moved by school children. Presumably defendant's delivery man knew of the presence of the school, having served the community for some time. The evidence shows that one of defendant's employees saw glass along the two-foot strip which would indicate that the crates or the contents had been tampered with. If defendant had used due care and inspected the pile of crates or removed it (it having left them there for over a month), the two displaced crates probably would have been discovered.

When the crates became scattered and hidden in the weeds they would be a danger to anyone lawfully using the area.

■ Viewing the issue as one of proximate or legal cause, and conceding there was some intervening agency in the chain of causation, such agency was not a superseding one exonerating defendant, because, as we have seen, what occurred was reasonably foreseeable, and should have been anticipated. Certainly, when that is true the intervening agency does not break the chain of causation. The consequences of defendant's acts were natural and probable. In *Katz* v. *Helbing*, 215 Cal. 449 [10 P.2d 1001], defendant, a contractor engaging in erecting a structure on a city lot, pursuant to a permit from the city, placed a box of lime partly on the sidewalk and partly on the street. Two boys playing with the lime threw some of it at a passing streetcar injuring the plaintiff who was a passenger thereon. Judgment for plaintiff was affirmed, this court stating at page 451:

"This practice [placing building materials in the street], under ordinary circumstances, is recognized as lawful by custom and judicial decision. But if experience had demonstrated that the placing of building materials in public streets and sidewalks was likely to be attended by accidents to persons lawfully using said streets and sidewalks, *whether by virtue of wrongful acts of interference of young children or otherwise,* we might expect to find the matter regulated by statute, and in the absence of statutory prohibitions *it would be the duty of courts and juries to declare such conduct wrongful if a reasonably prudent man would have foreseen that injury would probably result, for the acts of a defendant are deemed the proximate cause of such consequences as a reasonably prudent man would anticipate as likely to result* therefrom. . . . Intervening wrongful acts of third persons, but for which injuries complained of would not have been received, ordinarily break the chain of causation, because they are not to be anticipated as probable consequences, but are occasional and exceptional results. But this is not always the case, especially where the acts of children of a nonresponsible age are involved. . . .

"Tested by these principles, we think the record sufficiently supports the jury's verdict against the defendants. The box containing the lime was on the sidewalk and street, unguarded and practically uncovered. There were no warning signs on or near it, and there was no watchman at the building. . . .

"In our opinion, however, it is not essential to the liability

of any of the defendants that they have had actual knowledge of the activities of the children. We think there is no doubt that the conduct of the parties who were responsible for allowing this highly dangerous material to remain on the sidewalk uncovered, unguarded, and with no precautions taken to prevent injury to members of the public, was negligent. We think it may also be said that the box with its material was attractive to small boys, and that defendants were charged with notice of the possibility of boys being allured by it and using it in a manner dangerous to others. Even if defendants knew nothing of the acts of the children in the instant case they should have known, both from general experience and from the fact that the children had played with the material for days prior to the accident. Under all of the circumstances the jury might certainly find, as may be implied from the verdict, that the consequences in this case should have been foreseen.'' (Emphasis added.) (See, also, *Merrill* v. *Los Angeles Gas & Electric Co.*, 158 Cal. 499 [111 P. 534, 139 Am.St.Rep. 135, 31 L.R.A.N.S. 559] ; *Catlin* v. *Union Oil Co.*, 31 Cal.App. 597 [161 P. 29] ; *Pastene* v. *Adams*, 49 Cal. 87; *Stasulat* v. *Pacific Gas & Electric Co.*, 8 Cal.2d 631 [67 P.2d 678] ; Rest. Torts, §§ 447-9, 452.) It has been tersely stated that:

"If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby.'' (Rest. Torts, § 449.) It has been held that the rules on the subject in the Restatement of Torts, sections 442-453, are applicable in this state. (*Stasulat* v. *Pacific Gas & Electric Co.*, 8 Cal.2d 631 [67 P.2d 678].)

Finally, the issue of proximate cause is essentially one of fact. (*Fennessey* v. *Pacific Gas & Electric Co.*, 20 Cal. 2d 141 [124 P.2d 51] ; 19 Cal.Jur. 732-3.)

Particular reliance is placed by defendant upon *Schwartz* v. *California Gas & Electric Corp.*, 163 Cal. 398 [125 P. 1044], where defendant negligently dropped an insulator on plaintiff's land and the latter's horse was injured when he came in contact with it. The court reversed a judgment for plaintiff on the ground of an alleged erroneous instruction. The opinion contains the erroneous statement that: " 'an injury is not actionable which would not have resulted from the act of negligence, except for the interposition of an

independent cause.' '' (P. 402.) While there are distinguishing factors in the case at bar, the Schwartz case is out of harmony with the rules heretofore stated. It is not always true that an intervening agency will relieve defendant of responsibility. For that reason it must be overruled. Likewise, *Solomon* v. *Red River Lumber Co.*, 56 Cal.App. 742 [206 P. 498]; and *Royal Ins. Co.* v. *Mazzei*, 50 Cal.App.2d 549 [123 P.2d 586], are distinguishable, but appear to approve the rule in the Schwartz case. In that respect they are disapproved.

For the foregoing reasons the judgment is affirmed.

Gibson, C. J., Shenk, J., Schauer, J., and Spence, J., concurred.

TRAYNOR, J.—I concur in the judgment. It is my opinion that defendant's liability depends entirely upon whether it violated a duty of protecting the plaintiff from unreasonable risk of harm (See, Restatement: Torts, § 282) and that consideration of the case in terms of proximate cause obscures the real issue. Moreover, I do not believe that ''the issue of proximate cause is ordinarily one of fact.''

That plaintiff's harm was in fact caused by defendant's conduct there can be no doubt. Whatever the means by which the milk crates were moved from one place to the other, defendant's leaving them in the parking was a substantial factor in bringing about the harm. (See, Restatement: Torts, § 431.) With that determined, the question of causation is settled. It remains to determine only whether the harm falls within the limits of defendant's legal responsibility for the consequences of its conduct. In my opinion that determination is made once it is established that defendant's conduct was or was not wrongful with respect to the plaintiff; for the risk reasonably to be foreseen not only creates the liability but defines its limits. (*Palsgraf* v. *Long Island R. R. Co.*, 248 N.Y. 339, 344, 346 [162 N.E. 99, 59 A.L.R. 1253]; *Tullgren* v. *Amoskeag Mfg. Co.*, 82 N.H. 268, 276 [133 A. 4, 46 A.L.R. 380]; see, *Polemis* v. *Furness, Withy & Co.*, [1921] 3 K.B. 560; Green, The Rationale of Proximate Cause, pp. 88, 118; Seavey, *Mr. Justice Cardozo and The Law of Torts*, 52 Harv.L.Rev. 372, 381-390; Gregory, *Proximate Cause in Negligence—A Retreat from ''Rationalization,''* 6 U. of Chic. L.Rev. 36.)

It must be recognized, however, that the question of legal responsibility is commonly considered in terms of ''proximate

cause," which is ordinarily concerned, not with the fact of causation, but with the various considerations of policy that limit an actor's responsibility for the consequences of his conduct. (See, Prosser, Torts, pp. 311-313.) Although the doctrine of proximate cause is designed to fix the limitations upon liability, it has not yet been so formulated as to have a fair degree of predictability in its application in marking the boundary between liability and nonliability. The vagueness of the doctrine has been candidly admitted in the dissenting opinion of Judge Andrews in *Palsgraf* v. *Long Island R. R. Co.*, 248 N.Y. 339, 352 [162 N.E. 99, 59 A.L.R. 1253]: "A cause but not the proximate cause. What we do mean by the word 'proximate' is, that because of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point. This is not logic. It is practical politics." It may well be that any case can be analyzed more clearly without applying the doctrine of "proximate cause." (See, Green, *Merlo* v. *Public Service Company—A Study in Proximate Cause*, 37 Ill.L.Rev. 429.) In any event, application of the doctrine to cases like the present one only leads to confusion, for the considerations that determine whether a defendant was negligent with respect to a plaintiff define the limits of his responsibility. "Almost invariably these cases present no issue of causation in fact, since the defendant has created a situation acted upon by another force to bring about the result; and to deal with them in terms of 'proximate cause' is only to avoid the real issue. The question is one of negligence and the extent of the obligation: whether the defendant's responsibility extends to such interventions, which are foreign to the risk he has created. It might be stated as a problem of duty to protect the plaintiff against such an intervening cause. A decision that the defendant's conduct is not the 'proximate cause' of the result means only that he has not been negligent at all, or that his negligence, if any, does not cover such a risk." (Prosser, Torts, p. 367; *Palsgraf* v. *Long Island R. R. Co., supra; Sinram* v. *Pennsylvania R. Co.*, 61 F.2d 767, 770; *Waube* v. *Warrington*, 216 Wis. 603, 613 [258 N.W. 497, 98 A.L.R. 394]; *Bourhill* v. *Young* [1942], 2 All Eng.Rep. 396; *Dulieu* v. *White & Sons* [1901], 2 K.B. 669, 685.)

When defendant in the present case left its crates unattended on the parking, it created an unreasonable risk that they would be scattered and result in harm to persons whose

passage they obstructed. The risk reasonably to be foreseen included the possibility that the crates, left readily accessible to the passing crowd day after day, would be moved about and become a hazard to persons not only on the street and sidewalk but on the other property in the vicinity of the parking. ''The kind of harm which in fact happened might have been expected, though the precise manner in which it happened was determined by an extraneous accident.'' (Pollock, Law of Torts (9th ed.), pp. 50-51; *Stasulat* v. *Pacific Gas & Electric Co.*, 8 Cal.2d 631, 637-638 [67 P.2d 678]; *Reithardt* v. *Board of Education*, 43 Cal.App.2d 629, 635 [111 P.2d 440]; *Guinan* v. *Famous Players-Lasky Corp.*, 267 Mass. 501, 517 [167 N.E. 235]; see, Bohlen, Studies In The Law of Torts, p. 8.) It is immaterial that an intervening force moved the crates and brought about the result, for defendant's responsibility extended to such intervention. The possibility that third persons would move the crates was not so remote that it could not be regarded as part of the risk. Defendant's negligence consisted in failing to protect plaintiff against that risk. (See, Prosser, Torts, pp. 355-357; *Katz* v. *Helbing*, 205 Cal. 629 [271 P. 1062, 62 A.L.R. 825]; *Merrill* v. *Los Angeles Gas & Electric Co.*, 158 Cal. 499, 505 [111 P. 534, 139 Am.St.Rep. 135, 31 L.R.A.N.S. 559]; *Nason* v. *Lord-Merrow Excelsior Co.*, 92 N.H. 251, 253 [29 A.2d 464]; *Guinan* v. *Famous Players-Lasky Corp., supra*, at p. 517; *Sycamore Preserve Works* v. *Chicago & N. W. R. Co.*, 366 Ill. 11 [7 N.E.2d 740, 111 A.L.R. 1133]; *Lawrenceburg* v. *Lay*, 149 Ky. 490 [149 S.W. 862, Ann.Cas. 1914A 1194, 42 L.R.A.N.S. 480]; *Shanley* v. *Hurley*, 96 Vt. 119 [117 A. 250, 23 A.L.R. 261]; *cf. Stultz* v. *Benson Lumber Co.*, 6 Cal.2d 688, 695 [59 P.2d 100]; see, Restatement, Torts, § 302, comment (1), §§ 447-449, 452; 25 Cal.L.Rev. 247; 38 Am.Jur., Negligence, § 70.) This course of reasoning departs from the accustomed one only because of the continuing confusion engendered by the doctrine of proximate cause. No rules of property are disturbed; this field of law is not one in which people enter into transactions in reliance on past decisions. In all probability the general expectation is the reasonable one that in time the courts will dispel the mists that have settled on the doctrine of proximate cause in the field of negligence.

If, however, the extent of defendant's liability is determined in terms of ''proximate cause'' it should be recognized that the issue presented is one of law. Whether a defendant's

conduct is an actual cause of a plaintiff's harm is a question of fact, but the existence and extent of a defendant's liability presents a question of law. (See, Restatement, Torts, § 453.) The distinction is important in determining the respective functions of court and jury and the scope of review by an appellate court. Ordinarily, the jury decides questions of fact and the court questions of law, but there are sometimes variations. (See, Thayer, Preliminary Treatise on Evidence At The Common Law, pp. 185, 202; 9 Wigmore, Evidence (3d ed.), p. 500.) With respect to questions of fact the court reserves the power of deciding whether an issue should be presented to the jury: if reasonable men could not differ as to whether the evidence does or does not establish the existence of a fact, the court will not submit the issue to the jury. The determination of the standard of reasonable conduct by which a defendant's conduct is to be measured involves a question of law, a determination whether or not liability should be imposed. This question is nevertheless commonly left to the jury, although sometimes the formulation of the standard of reasonable conduct is taken over by an appellate court or provided for by legislation. (See, *Clinkscales* v. *Carver,* 22 Cal.2d 72 [136 P.2d 777]; *Sioux City & Pacific R. Co.* v. *Stout,* 17 Wall (84 U.S.) 657, 664 [21 L.Ed. 745]; *Grand Trunk Ry. Co.* v. *Ives,* 144 U.S. 408, 417 [12 S.Ct. 679, 36 L.Ed. 485]; Restatement, Torts, § 285; Holmes, The Common Law, pp. 120-129; Holmes, *Law in Science and Science in Law,* 12 Harv.L.Rev. 443, 457.) Insofar as the issue of "proximate cause" is concerned with the existence of a duty or with limitations imposed upon liability as a matter of public policy, the issue is for the court. Insofar as it is concerned with the foreseeability of the particular risk or the reasonableness of defendant's conduct with respect thereto in doubtful cases, the issue is for the jury in the absence of standards imposed by the Legislature or an appellate court. (See, Restatement, Torts, § 453; Prosser, Torts, pp. 373-375; *Stasulat* v. *Pacific Gas & Electric Co.,* 8 Cal.2d 631, 638 [67 P.2d 678].)

Edmonds, J., concurred.