[Civ. No. 14956. Second Dist., Div. Two. Mar. 7, 1946.]

NORTHWESTERN NATIONAL INSURANCE COMPANY OF MILWAUKEE, WISCONSIN (a Corporation) et al., Respondents, v. ROGERS PATTERN & ALUMINUM FOUNDRY (a Corporation) et al., Appellants.

J. Wesley Cupp and Forrest A. Betts for Appellants.

Sidney A. Moss and Jean Wunderlich for Respondents.

McCOMB, J.—This is an appeal by defendants from a judgment in favor of plaintiff, Northwestern National Insurance Company of Milwaukee, Wisconsin, a corporation, in the sum of $3,000, and from a judgment in favor of John E. Carson, Cornelius Prugh Harnish, trustees under the will of William S. Prugh, deceased, and Marion Wright in the sum of $3,300. The action was to recover damages resulting from the alleged negligence of defendants and was tried without a jury.

The evidence being viewed in the light most favorable to the plaintiffs (respondents), and pursuant to the rules set forth in *Estate of Isenberg*, 63 Cal.App.2d 214, 216 et seq. [146 P. 2d 424], the essential facts are:

Shortly prior to April 19, 1943, defendants sent to North American Metals Company ten sacks of metal alloy castings. Accompanying them in accordance with their established practice was a purchase order stating the castings were aluminum alloy castings heat-treat 195. North American Metals Company's general manager, Mr. Leidig, had previously received similar shipments from defendants accompanied by similar purchase orders and had been orally assured by defendants that aluminum castings heat-treat 195 would be the only type of castings that would be sent to him. The number of the purchase order signified that defendants expected the castings to be immersed in a molten salt bath at between 925 and 970 degrees for a period of 12 hours. Before immersing a portion of the shipment in question Mr. Leidig saw that the color of some of the castings differed slightly from the color of other castings in the same shipment and noticed a difference in the weight of the castings from those previously received. He thereupon rechecked the purchase order and examined certain test-bars which accompanied the shipment, and upon satisfying himself that the shipment was represented to be aluminum and was to receive heat-treat 195, he lowered the castings into a salt bath consisting of sodium nitrate heated to 900 degrees Fahrenheit. In fact, however, the shipment consisted of six sacks of aluminum castings and four sacks of magnesium castings. When the magnesium came in contact with the sodium nitrate bath a violent explosion took place resulting in a conflagration which caused damages to the plaintiffs in the sum of $6,300.

Defendants admit that they were negligent but con-

tend *that their concurrent negligence was the remote and not a proximate cause of the fire which caused damage to plaintiffs, in that the negligence of Mr. Leidig and the North American Metals Company was an independent intervening cause of the conflagration.*

This proposition is untenable since the law is settled in California that an intervening act of a third person, negligent in itself, is not a superseding cause of injury to another which the actor's negligent conduct is a substantial factor in bringing about, if (1) the actor at the time of his negligent conduct should have realized that a third person might so act, or (2) a reasonably prudent man knowing the existing situation when the act of the third person was done would not regard it as highly extraordinary that the third person should so act. (*Mosley* v. *Arden Farms Co.,* 26 Cal.2d 213, 219 [157 P.2d 372, 158 A.L.R. 872]. See, also, *Lacy* v. *Pacific Gas & Elec. Co.,* 220 Cal. 97, 98 [29 P.2d 781] ; *Herron* v. *Smith Brothers, Inc.,* 116 Cal.App. 518, 521 [2 P.2d 1012] ; Restatement of the Law, vol. II, Torts (Negligence), [1934] p. 1196, § 447.)

■ Applying the foregoing rule to the facts in the instant case it is apparent that defendants, when they delivered to the North American Metals Company the magnesium castings, should have realized that a third person might assume that such castings were aluminum in view of their appearance and the fact the purchase order stated that they were aluminum and that on previous occasions they had delivered to the same parties aluminum castings; and defendants should have further realized that such third person might immerse the castings in a sodium nitrate bath with a resulting fire. Likewise defendants, exercising reasonable prudence and knowing the foregoing facts, should not have regarded it as highly extraordinary that the North American Metals Company would immerse the castings in a heated sodium nitrate bath. It thus appears that defendants' negligence was a concurrent and a proximate cause of the damages suffered by plaintiffs.

*Katz* v. *Helbing,* 205 Cal. 629 [271 P. 1062, 62 A.L.R. 825], is not here in point for the reason the case was decided on demurrer, and in reversing the judgment in favor of the defendant the Supreme Court merely held that it was a question of fact whether the acts alleged to be intervening causes were in fact such or constituted concurring, proxi-

mate causes of the injury, which question of fact should be left to the decision of the jury.

*Schwartz* v. *California Gas etc. Corp.*, 163 Cal. 398 [125 P. 1044], relied on by defendants, was expressly overruled bv our Supreme Court in the case of *Mosley* v. *Arden Farms Co., supra,* at p. 219.

There is nothing in *Berry* v. *San Francisco & North Pacific Railroad Co.*, 50 Cal. 435, which bears upon the present issue.

In *Catlin* v. *Union Oil Co.*, 31 Cal.App. 597 [161 P. 29], and in *Stultz* v. *Benson Lumber Co.*, 6 Cal.2d 688 [59 P.2d 100], the actors whose negligence was held to constitute an independent intervening cause had knowledge of the dangerous character of the instrumentality which they used negligently. In the Catlin case the grocer who sold kerosene mixed with gasoline knew that he was dealing with a highly inflammable fuel at the time he sold it. Likewise in the Stultz case the plaintiff's employer knew that the planks which he permitted his employees to use were full of knots and were cross-grained and not suitable for the purpose of supporting a scaffolding. In the present case Mr. Leidig denied he had ever visited defendants' plant or received any instructions from defendants relative to the difference between magnesium and aluminum castings.

For the foregoing reasons the judgment is affirmed.

Moore, P. J., and Wilson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 29, 1946.