## UNITED STATES v. WHITE.
### No. 13226.

United States Court of Appeals
Ninth Circuit.
Feb. 18, 1954.

Lloyd H. Burke, U. S. Atty., Fred Woelflen, Asst. U. S. Atty., San Francisco, Cal., for appellant.

M. S. Huberman, Leonard J. Bloom, San Francisco, Cal., for appellee.

Before HEALY, ORR, and POPE, Circuit Judges.

HEALY, Circuit Judge.

This is a suit by appellee (hereafter White) under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., to recover damages for personal injuries accidentally sustained on the Camp Beale Army base located near Marysville, California. On a trial to the court findings were made and judgment awarded in White's favor.

At and prior to the time of the accident (November 22, 1946) White was an employee of Mars Metal Company. Pursuant to invitation from the War Department, Mars had entered into a contract with the government for the purchase of non-ferrous scrap metal located on the Camp Beale firing ranges at a specified price. White sustained his injuries while collecting scrap metal as an employee of Mars pursuant to this contract.

The court found on the basis of sufficient evidence that prior to White's entry on the strafing range, where the accident occurred, the government knew there was a strong possibility that unexploded shells or duds existed on that range and that the presence thereof posed a condition of extreme danger to any person entering thereon. A month prior to the accident Captain Jones, the Post Range Officer in charge, had conducted a survey of the Camp Beale firing ranges, and on the basis of his survey had recommended that dedudding operations be undertaken.[1] This recommendation was rejected, apparently by higher authorities, because of the expense involved. The strafing range at the time of the accident was grass-covered and visual inspection alone could not detect the presence of hidden duds. Although electrical and other scientific detecting devices were known and available, for reasons of economy, as already said, they were not employed.

---

1. Apparently this survey was pursuant to an outstanding War Department Circular concerning the matter of dedudding areas that had been used as gunnery ranges. This directive (Circular I–195) says: "It is the obligation of the War Department in the interest of the United States to restore such areas by locating and removing or neutralizing, so far as practical, all explosives which remain thereon."

The government failed to warn White of the known danger he was likely to encounter, nor was he told of the findings made by Captain Jones' survey nor informed of the fact that recommended electrical or other detecting devices had not been used. Furthermore, so the court found, Sergeant Hodges, the person in charge of the strafing range under the Post Range Officer, told White prior to his entry that the strafing range was in a safe condition except for a certain marked dud—an unexploded 75mm. artillery shell—which he pointed out to White. He informed White that the range had not been used for some time and showed him a solid iron 37mm. non-explosive anti-tank projectile, advising him that he was likely to find many such on the range. Hodges knew that Army personnel were assisting White, but gave him no warning other than to admonish him to instruct the personnel to stay away from the marked dud above referred to. White himself had no special training in firing range decontamination operations nor in detonation technique.

In preparing to perform the contract White engaged several off-duty enlisted men to aid in removing the scrap. On the day of the accident he and these helpers were engaged in collecting cartridges from the strafing range. One of the helpers, a Private Lang, in the course of the work picked up what appeared to be one of the iron 37mm. anti-tank projectiles which Sergeant Hodges had previously remarked to White were non-explosive and present in large numbers. Lang, who was close to White, asked the latter if this was the sort of item in which he was interested. White, being interested only in non-ferrous metal, replied in the negative, and almost simultaneously Lang pitched or handed the projectile to White who dropped the same, the object being in his hands but a fraction of a second. He had no time to grasp or inspect it. The projectile exploded upon hitting the ground, causing the injuries which are the basis of the suit, and also injuring Lang. The missile was apparently a 37 millimeter anti-personnel projectile with an explosive warhead, similar in appearance to the harmless 37mm. anti-tank projectile shown to White by Sergeant Hodges.

Concededly, White was at the time of the injury a business invitee on the premises of the government. Under the applicable (California) law the United States was obligated to provide him with a reasonably safe place to perform the contract, among the obligations being the duty to inspect the strafing range for latent or hidden dangers and to remove the same, or to warn White thereof. These duties were to be discharged with a degree of care commensurate with the danger involved. Freeman v. Nickerson, 77 Cal.App.2d 40, 174 P.2d 688; Hinds v. Wheadon, 19 Cal.2d 458, 121 P.2d 724; Rudd v. Byrnes, 156 Cal. 636, 640, 105 P. 957, 26 L.R.A.,N.S., 134. Not only was the United States found remiss in these particulars, but through its responsible agent it affirmatively represented to White that the strafing range was safe.

By way of avoidance of the consequence of its asserted negligence the government advances several arguments, one of which is that Lang's action in handing or tossing the projectile to White was an intervening cause, serving in law to break the chain of causation. We do not agree. It is the rule in California that an intervening act of a third person, though negligent in itself, is not if foreseeable a superseding cause of injury. Northwestern National Insurance Co. v. Rogers Pattern and Aluminum Foundry, 73 Cal.App.2d 442, 166 P.2d 401. Here the court found that Lang's conduct was normal and natural, thus foreseeable. It cannot be said that the finding is clearly erroneous. There is nothing in the record to suggest that Lang knew or should have known that the projectile was explosive or that his conduct in tossing or handing it to White was, as is contended, "most extraordinary." The findings make it clear that he handed or tossed the object to

White either before or simultaneously with his being told by White that it was not wanted.

Another contention, predicated on the doctrine of contributory negligence, is that Lang was White's servant, and accordingly that his negligence is imputable to White. There are perhaps two answers to this argument, either of them sufficient, the first being that Lang was not an employee of White, but of Mars Metal Company. White was himself a mere employee of Mars, working for the modest wage of $250 per month as the record shows. He and Lang would seem to have been fellow employees of Mars, or at most Lang was a subagent of White within the sense of Cal.Civ.Code § 2351,[2] hence White would not be vicariously liable for Lang's tort. Shannon v. Fleishhacker, 116 Cal.App. 258, 264, 2 P.2d 835. The court did not find specifically on the subject, presumably for the reason that the defense of imputed contributory negligence had not been raised by the answer or was not being urged. However, the memorandum opinion of the court together with its findings make it clear that Lang was not thought to have been negligent, but rather that his action was regarded merely as the doing of the usual and expected thing under the circumstances. As is already evident, we see no reason to disagree with the court's views in this respect. Thus even if, as claimed, Lang were White's servant the fact would not substantiate the government's defense.

Finally, a question is raised which might afford difficulty if a decision of it were necessary to the disposition of the appeal. The question has to do with the exclusory provision of 28 U.S.C.A. § 2680, relating to an omission of an employee of the government in the performance or in the failure to perform a "discretionary function." So far as here pertinent it reads: "The provisions of this chapter and section 1346(b) of this title shall not apply to—(a) Any claim * * * based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

It is claimed that this exception from governmental liability under the Tort Claims Act controls the case before us.[3] We think otherwise. As we understand the philosophy of the holding in Dalehite v. United States, 346 U.S. 15, 73 S. Ct. 956, 97 L.Ed. 1427, the broad scope there given the term "discretionary function" would not in any event carry us beyond negligence predicated on the departmental rejection, on the score of expense, of Captain Jones' recommendation that the Camp Beale firing ranges be dedudded. We assume, without deciding, that the decision not to undertake the removal of hidden dangers constituted the exercise of a discretionary function of which an invitee such as White was not entitled to take advantage. But the government's failure as a landowner to warn White, a business invitee, of the known danger he was likely to encounter, or to inform him of the findings made by Captain Jones' survey, or of the fact that recommended dedudding methods had not been employed, could not rationally be deemed the exercise of a discretionary function. Even less was Sergeant Hodges exercising

2. "§ 2351. Subagent rightfully appointed, represents principal. A subagent, lawfully appointed, represents the principal in like manner with the original agent; and the original agent is not responsible to third persons for the acts of the subagent."

3. The defense is raised for the first time on the appeal, in all likelihood because of the intervening decision of the Supreme Court in Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427. Appellee contends that the defense, not having been pleaded, was waived. The United States insists that the point is jurisdictional, hence may be raised at any time; and we assume, for decisional purposes only, that its contention is correct.

such a function when he assured White that the strafing range, with a single known exception, was in a safe condition for the sort of undertaking White was to perform.

There being ample grounds on which the judgment may be supported, it is affirmed.