[L. A. No. 23537.   In Bank.   June 29, 1955.]

JAMES RICHARDSON et al., Respondents, v. HERBERT HAM et al., Appellants.

BEN W. BARNETT et al., Respondents, v. HERBERT HAM et al., Appellants.

MARCO J. MEDIN, JR., et al., Respondents, v. HERBERT HAM et al., Appellants.

Gray, Cary, Ames & Frye, James W. Archer, Ward W. Waddell, Jr., and Thomas C. Ackerman, Jr., for Appellants.

McInnis, Hamilton & Fitzgerald, William T. Fitzgerald, Franklin B. Orfield, Thomas P. Golden and Hubert L. Rose for Respondents.

TRAYNOR, J.—Defendants, members of a construction contracting partnership, were engaged in earth moving operations in the development of a new subdivision located on top of a mesa in San Diego County. In their work they used two 26-ton Allis-Chalmers bulldozers, which were operated by two of their employees. The bulldozers did not have electrical ignition systems, and they could be started by pushing the compression lever in and stepping on the starter. The engine was stopped by pulling the compression lever out. They were equipped with fluid drives and could be started in gear, in which case they would commence to move as soon as the engine started. No locks were supplied with the bulldozers by the manufacturer, but the local dealer had improvised a lock that would prevent starting. It consisted of a metal sleeve welded to a padlock that locked around the starter rod thereby preventing the starter from operating. The lock provided by the dealer for one of the bulldozers was lost, and defendants improvised a substitute. At the close of the working day on Saturday, July 5, 1952, the operators of the bulldozers parked them near one another on top of the mesa. One of them was locked by the dealer's lock, and there is evidence that as to the other, only the padlock, but not the sleeve of the improvised lock, was put around the starter rod. The padlock alone would not prevent the starter from operating. The following evening three young men, aged 17, 18, and 20, after drinking intoxicants, decided to go for a drive with the wife of one of them. While driving, one of them mentioned having seen the bulldozers, and they decided to go to the mesa for the purpose of racing them. On their arrival, two of the young men left the car and attempted to start the bulldozers. They were unable to start the bulldozer equipped with the dealer's lock but succeeded in starting the other bulldozer. They drove it around the mesa for 15 to 30 minutes causing considerable damage, and then, being unable to stop it, headed it toward a canyon to the east of the mesa and abandoned it. It went off the edge of the mesa, down the hill, across a freeway, and traveled for

about a mile before it was halted by a retaining wall and a utility pole. During the course of its journey it traveled through a house and seriously injured the occupants. It also collided with a house-trailer and an automobile causing further property damage and personal injuries. Plaintiffs, whose persons or property were in the path of the bulldozer, brought these actions for damages against defendants alleging that they were negligent in leaving the bulldozer unattended and unlocked. The actions were consolidated for trial, and the jury returned verdicts for defendants. The trial court granted motions for a new trial on the grounds of insufficiency of the evidence and misconduct of the jury. Defendants appeal.

"In passing upon a motion for a new trial based upon the insufficiency of the evidence, it is the exclusive province of the trial court to judge the credibility of the witnesses, determine the probative force of testimony, and weigh the evidence [citations]. In considering the sufficiency of the evidence upon such motion the court may draw inferences opposed to those drawn at the trial [citation], and where the only conflicts consist of inferences deduced from uncontradicted probative facts, the court may resolve such conflicts in determining whether the case should be retried [citation]. It is only where it can be said as a matter of law that there is no substantial evidence to support a contrary judgment that an appellate court will reverse the order of the trial court." (*Brooks* v. *Metropolitan Life Ins. Co.*, 27 Cal.2d 305, 307 [163 P.2d 689]; see also *Ballard* v. *Pacific Greyhound Lines*, 28 Cal.2d 357, 359 [170 P.2d 465]; *Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165, 168 [153 P.2d 338]; *Martin* v. *Smith*, 103 Cal.App.2d 894, 897-898 [230 P.2d 679], and cases cited; 3 Witkin, California Procedure 2062.)

Defendants contend that there is no substantial evidence that would support a judgment against them. They rely on the recent decision of this court in *Richards* v. *Stanley*, 43 Cal.2d 60 [271 P.2d 23], holding that, in the absence of special circumstances, the duty of an owner of an automobile to exercise reasonable care in the management thereof does not include a duty to remove the ignition key to protect persons on the highway from the negligent driving of a thief. Since, however, the kinds of foreseeable intervening conduct by third parties as well as the risks created by such conduct in this case are materially different from those considered in the Richards case, that case is not controlling here.

■ Automobiles do not arouse curiosity, and ordinarily the only appreciable risk that they will be set in motion if they are left unattended arises from the possibility of their being stolen. ■ The record in the present case, on the other hand, shows that defendants' bulldozers aroused curiosity and attracted spectators, while they were in operation as well as while they were parked for the night. Moreover, curious persons had been known to climb on them, and it could reasonably be inferred that they were attractive to children when left unattended at the end of the working day. The evidence is therefore sufficient to justify the conclusion that there was a reasonably foreseeable risk that defendants' bulldozers might be tampered with when left unattended.

Given this foreseeable risk of intermeddling, the question is presented whether defendants were under a duty to exercise reasonable care to prevent intermeddlers from putting their bulldozers in operation. In the Richards case it was concluded that even if theft was reasonably to be foreseen, the owner was under no duty to persons on the highway to exercise reasonable care to keep his car out of the hands of a thief. It was pointed out that the owner will ordinarily have no reason to foresee that a thief will be an incompetent driver, that the risk of negligent driving arising from possible theft is less than the risk that the owner might intentionally create without negligence by lending his car to another, and that it would be anomalous to impose greater liability when the car was being driven by a thief than that provided by statute when the owner voluntarily entrusts his car to another. The risks arising from intermeddling with bulldozers, however, are entirely different from those arising from the driving of an automobile by a thief. Bulldozers are relatively uncommon, and curious children or others attracted by them ordinarily will not know how to operate them. An intermeddler who starts a bulldozer accidentally or otherwise may not be able to stop it, and the potentialities of harm from a 26-ton bulldozer in uncontrolled motion are enormous, particularly when it is left on top of a mesa from which it can escape and injure persons and property located below.

■ The extreme danger created by a bulldozer in uncontrolled motion and the foreseeable risk of intermeddling fully justify imposing a duty on the owner to exercise reasonable care to protect third parties from injuries arising from its operation by intermeddlers. (See *Jensen* v. *Minard, ante,* pp. 325, 327, 328 [282 P.2d 7]; *Warner* v. *Santa Catalina Island Co., ante,* pp. 310, 317 [282 P.2d 12], and cases cited.)

■ In the absence of an effective lock the bulldozer engine could be started by pushing in a lever and stepping on the starter. Moreover, the engine could be started with the bulldozer in gear, and if so started, the bulldozer would commence to move immediately. Although this risk could be avoided by the use of a simple but effective lock, there is evidence that no such lock was used. Accordingly, there is substantial evidence that defendants did not exercise reasonable care to prevent intermeddlers from setting their bulldozer in motion.

It is contended, however, that even if defendants were under a duty to protect plaintiffs from injuries from operation of the bulldozer caused by ordinary intermeddlers, they were not under a duty to protect plaintiffs from intermeddlers who deliberately undertook to operate the bulldozer, or, in other words, that the intentional misconduct of the young men constituted a superseding cause of plaintiffs' injuries. (See Rest. Torts, § 448.) ■ It is settled, however, that "If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby." (Rest. Torts, § 449; *McEvoy* v. *American Pool Corp.*, 32 Cal.2d 295, 298-299 [195 P.2d 783]; *Benton* v. *Sloss*, 38 Cal.2d 399, 405 [240 P.2d 575].) ■ The possibility of the intentional, wrongful misconduct that occurred in this case was not so remote as not to constitute "one of the hazards" that would justify the conclusion that defendants' failure to lock the bulldozer was negligent. Accordingly, defendants' duty to protect plaintiffs from injuries caused by the uncontrolled and unauthorized operation of their bulldozer included a duty to protect plaintiffs from the intentional misconduct of the young men, and such misconduct did not therefore constitute a superseding cause of plaintiffs' harm.

Since the evidence was sufficient to support the trial court's granting of plaintiffs' motions for a new trial, it is unnecessary to decide whether the orders might also be sustained on the ground of the alleged misconduct of the jury.

The orders are affirmed.

Gibson, C. J., Shenk, J., and Schauer, J., concurred.

SPENCE, J.—I concur in the affirmance of the orders granting a new trial, as there was ample evidence to sustain

a finding that defendants were negligent, and that such negligence was a proximate cause of plaintiffs' damage. I also agree that this case is distinguishable from *Richards* v. *Stanley*, 43 Cal.2d 60 [271 P.2d 23], but I still adhere to the views expressed by my dissenting opinion in the Richards case.

CARTER, J.—I concur in the judgment of affirmance, but as I read the majority opinion it seeks to establish a standard of conduct based upon the view of those members of the court joining in said opinion without regard to considerations of public policy and the experience of people generally in the ordinary walks of life. It does not appear that the Legislature has established a standard of conduct for those owning, possessing and operating heavy equipment of the character here involved, and such standard must, therefore, be determined under the rules of the common law which accepts as its criterion the conduct of a reasonably prudent person. The determination of this standard, is, of course, in the first instance, for the trier of fact; that is, it is for the trier of fact to determine from the evidence presented whether or not the conduct of the defendants in the instant case was that of a reasonably prudent person. If the trier of fact determines that such conduct was not that of a reasonably prudent person under all the circumstances, the deduction to be drawn from such determination is that the defendants were negligent. There can be no question but that the defendants owed a duty to the plaintiffs here to exercise ordinary care in the control and management of their equipment so that it would not inflict injury upon plaintiffs without fault on their part. Here, the trial court by granting plaintiffs' motion for a new trial on the ground of the insufficiency of the evidence has determined in the first instance that defendants' conduct was not that of a reasonably prudent person and that they violated their duty when they so managed and controlled their equipment as to inflict injury upon plaintiffs. The District Court of Appeal by unanimous decision agreed with this determination of the trial court. (*Richardson* v. *Ham Bros. Const. Co.*, * (Cal.App.) 275 P.2d 532.) This determination was based upon the evidence presented to the trial court, and that court in the exercise of its fact finding power determined that defendants had deviated from the standard of conduct of a reasonably prudent person. This is the process by which the common law has been developed

---

*A hearing was granted by the Supreme Court on December 22, 1954.

and it has never been the function of an appellate court in cases of this character to arbitrarily establish standards of conduct upon which liability may or may not be predicated.

In discussing the development of the common law with respect to negligence Mr. Justice Holmes in his work entitled *The Common Law* makes the following illuminating observation:

"The cases which have raised difficulties needing explanation are those in which the court has ruled that there was *prima facie* evidence of negligence, or some evidence of negligence to go to the jury.

"Many have noticed the confusion of thought implied in speaking of such cases as presenting mixed questions of law and fact. No doubt, as has been said above, the averment that the defendant has been guilty of negligence is a complex one: first, that he has done or omitted certain things; second, that his alleged conduct does not come up to the legal standard. And so long as the controversy is simply on the first half, the whole complex averment is plain matter for the jury without special instructions, just as a question of ownership would be where the only dispute was as to the fact upon which the legal conclusion was founded. But when a controversy arises on the second half, the question whether the court or the jury ought to judge of the defendant's conduct is wholly unaffected by the accident, whether there is or is not also a dispute as to what that conduct was. If there is such a dispute, it is entirely possible to give a series of hypothetical instructions adapted to every state of facts which it is open to the jury to find. If there is no such dispute, the court may still take their opinion as to the standard. The problem is to explain the relative functions of court and jury with regard to the latter.

"When a case arises in which the standard of conduct, pure and simple, is submitted to the jury, the explanation is plain. It is that the court, not entertaining any clear views of public policy applicable to the matter, derives the rule to be applied from daily experience, as it has been agreed that the great body of the law of tort has been derived. But the court further feels that it is not itself possessed of sufficient practical experience to lay down the rule intelligently. It conceives that twelve men taken from the practical part of the community can aid its judgment. Therefore it aids its conscience by taking the opinion of the jury." (*The Common Law*, by Oliver Wendell Holmes, Jr., pp. 122-123.)

As stated above, the standard of conduct applicable to a particular factual situation—whether it was that of a reasonably prudent person—must be derived from daily experience, and a jury or trial judge is in a better position than an appellate court to make such determination. It seems clear that the only test the courts can apply in determining whether the conduct complained of was that of a reasonably prudent person is the reasonable minds test. (*Johnson* v. *Southern Pac. R. Co.*, 154 Cal. 285 [97 P. 520]; *Seller* v. *Market St. Ry. Co.*, 139 Cal. 268 [72 P. 1006]; *Herbert* v. *Southern Pac. Co.*, 121 Cal. 227 [53 P. 651]; *Zibbell* v. *Southern Pac. Co.*, 160 Cal. 237 [116 P. 513]; see dissenting opinion, *Gray* v. *Brinkerhoff*, 41 Cal.2d 180, 186, 192 [258 P.2d 834].) That reasonable minds differ as to whether defendants' conduct was that of a reasonably prudent person is demonstrated by the record before us which discloses that the trial judge, the three members of the District Court of Appeal and a majority of this court agree that their conduct was such that negligence may be inferred therefrom. A question of fact is therefore presented, and the ruling of the trial court in granting a new trial on insufficiency of the evidence must be upheld unless settled rules of law are disregarded.

Just to show that a conflict existed in the evidence, and in the inferences to be drawn therefrom, let us look at the facts and the inferences which may have motivated the trial court in its action in granting plaintiffs a new trial on the ground of insufficiency of the evidence:

The bulldozer in question was parked at the top of a mesa. After the intoxicated youths found they were unable to stop it, they abandoned it and *it went off the edge of the mesa, down the hill,* across a freeway causing personal injuries and property damage on its way. The inference to be drawn from the evidence relating to its position was that it was at the top of a hill and that the only place for it to go was *down.* The plaintiffs' injuries themselves carry the inference that it was left unattended in a place where it could cause injury if molested by untrained persons. Herbert Ham, one of the defendant owners, testified (by deposition) that he remembered seeing people drive up to look at the bulldozers; that he may have seen strangers get on the machines; that he had chased people away from the bulldozers mostly when they were not running; that all employees had verbal instructions to chase onlookers away from the machines; that he was afraid someone might be hurt if strangers got on the bull-

dozers; that the bulldozers were supposed to be locked with a sleeve and padlock which had been improvised to keep the machines immobilized. The inferences to be drawn, or which may have been drawn by the trial court, from this evidence were that defendants were aware that the bulldozers attracted the curious, "mostly" when they were not running; that defendants were aware that injury might result if strangers got on the machines; that the locks therefor were necessary to prevent just such an occurrence as the one here involved, and that if any untrained person started the machine it would be a danger both to themselves and others. Finney, an oiler, whose duty it was to lubricate the machines, testified that he had seen people in and about the general area where the bulldozers were parked; that these people were watching the bulldozers operate; that he had seen people there when he left at night; that he did the oiling after the drivers (or cat skinners) left for the night; that he was supposed to lock the machines when he was through work. A logical inference from this is that the defendants knew people were around in the vicinity of the parked bulldozers after all employees had left and that he was to lock the machines so that they would not be meddled with by curious strangers. Schlickelman, a cat skinner for defendants testified that there was no guard on duty to watch the equipment; that when he had been there at closing time he had seen people from 50 to 100 feet away watching the bulldozers; that he had seen people of all ages watching the machines; that he didn't remember whether any had gotten in the tractor while he had been around. It could be reasonably inferred from this that defendants knew that numbers of people of all ages were around the area where the bulldozers were parked at closing time.

Finney, the oiler, testified that to start the machines, a lever was pushed and a starter stepped on; that the machine could be started in gear and would move right off without pressing an accelerator; that it was similar to fluid drive except that it would start in gear. It could be inferred from this that it would be a simple matter for a curious person to start the machine without knowing how to stop it.

Summing up this evidence together with the inferences therefrom, we see an unlocked piece of heavy equipment which had a fascination for people of all ages parked unattended at the top of a hill with the possibility of causing untold damage to human life and property. We also see that the defendants knew curious onlookers were around the park-

ing area at closing time; that orders were given to drive these onlookers away; that the machines were supposed to be kept locked because of the fear that some of the curious might get on the machines and "hurt" somebody. It is reasonable to infer that the machine itself, weighing 26 or 7 tons, would have a fascination which an ordinary automobile would not have for the average person. It is also reasonable to note that a bulldozer is a machine capable of doing great bodily injury as well as property damage if in the hands of one not skilled in its operation. From its very size and complexity, it is reasonable to infer that once started in a downward direction it could not be stopped until it came to rest against an object sturdy enough to withstand its momentum. It should also be noted that in its downward course it would gain momentum and speed and that the force with which it would strike anything in its path would be greatly increased because of the added momentum and speed. This evidence is most certainly sufficient to sustain a verdict for the plaintiffs had one been had; hence it was not an abuse of discretion for the trial court to grant plaintiffs a new trial on the ground of insufficiency of the evidence.

All persons are required to use ordinary care to prevent others being injured as a result of their acts. Ordinary care has been defined as that degree of care which people of ordinarily prudent behavior could be reasonably expected to exercise under the circumstances of a given case. In other words, the care required must be in proportion to the danger to be avoided and the consequences that might reasonably be anticipated (*Crowe* v. *McBride,* 25 Cal.2d 318, 321 [153 P.2d 727]; *Hatzakorzian* v. *Rucker-Fuller Desk Co.,* 197 Cal. 82, 98 [239 P. 709, 41 A.L.R. 1027]; 19 Cal.Jur. 579; *Warner* v. *Santa Catalina Island Co., ante,* p. 310 [282 P.2d 12]). Section 447 of the Restatement of Torts sets forth the rule with respect to the intervening act of a third person as follows: "The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if (a) the actor at the time of his negligent conduct should have realized that a third person might so act. . . ." This rule is applicable in California (*Stasulat* v. *Pacific Gas & Elec. Co.,* 8 Cal.2d 631 [67 P.2d 678]; *Mosley* v. *Arden Farms Co.,* 26 Cal.2d 213, 219 [157 P.2d 372, 158 A.L.R. 872]; *Sawyer* v. *Southern Calif. Gas Co.,* 206 Cal.

366 [274 P. 544]). The evidence here shows without conflict that defendants' feared intermeddling by unauthorized persons; that they feared the tractors would be started by unauthorized persons; that they feared harm would come to others because of such intermeddling. It seems too clear to even warrant comment that the action taken by the intoxicated youths was reasonably foreseeable by defendants and hence not a supervening independent cause of plaintiffs' injuries and property damage (*Gall* v. *Union Ice Co.*, 108 Cal. App.2d 303, 313 [239 P.2d 48] ; *Northwestern Nat. Ins. Co.* v. *Rogers etc. Foundry,* 73 Cal.App.2d 442 [166 P.2d 401]).

*Zuber* v. *Clarkson Const. Co.,* 363 Mo. 352 [251 S.W.2d 52], is a case very similar to the one presently under consideration. Defendant construction company owned large motor-driven, earth-moving tractors which it left parked, at the end of the day, on a levee with the machinery in gear and the switches and ignitions unlocked with fuel in the tanks and the breaks off ready to be easily put in operation. The plaintiffs alleged that each evening curious spectators were gathered around watching the machines; that some of these persons had, to the defendant's knowledge, or the knowledge defendant should have had, theretofore started the tractors; that the tractors were left unattended at the close of the working day. It was alleged further that plaintiffs' decedent was killed because of injuries sustained by the unauthorized operation of one of defendant's unattended tractors. The court there said : ''It has been said a person who is responsible for an instrumentality which is dangerous and likely to cause injury to persons rightfully in its proximity is charged with taking appropriate precautions to avoid injury to such persons, and his failure to take such precautions constitutes negligence. . . . It has also been stated that a negligent act may be one which creates a situation which involves an unreasonable risk to another because of the expectable action of a third person. Restatement, Torts, § 302.

''Relating to those dangers to be reasonably anticipated— if there is some probability or likelihood, not a mere possibility, of harm sufficiently serious that ordinary men would take precautions to avoid it, then the failure to do so is negligence. While the likelihood of a future happening is the test of a duty to anticipate, this does not mean the chances in favor of the happening must exceed those against it. The test is not the balance of probabilities, but of the existence of some probability of sufficient moment to induce the rea-

sonable mind to take the precautions which would avoid it.'' (251 S.W.2d 52, 55.) The court held that the machines, left as they were, ready for operation were ''potentially dangerous, and, if one were started by some reckless person or by some intermeddler probably unskilled in the technique of its operation, it would (and did) become a monstrous instrumentality of destruction. It seems to us it could be reasonably said the person, defendant, the owner and responsible for these machines, with knowledge that curious intermeddlers were making the practice of operating the machines, had reason to anticipate or foresee that other intermeddlers would start the machines and that, among those who operated the machines, some person, though an adult, starting a machine would be reckless or unskilled. It is not too much to say that, in the circumstances averred, a reasonably prudent person should take into account these probabilities, and would foresee that some injury was likely to ensue.'' (251 S.W.2d 52, 56.) There are two distinguishing features to the Zuber case: it was alleged that defendant knew or in the exercise of reasonable care should have known that strangers had intermeddled with the machines and that the machines were parked in a public place. Plaintiffs here may, on a new trial, be able to produce additional evidence and show that defendants knew, or in the exercise of reasonable care should have known, that strangers had theretofore tampered with the machines or might tamper with them. As I have previously pointed out, a logical inference from the instructions given to the employees by defendants to lock the machines and chase the curious away is that defendants had reason to fear the unauthorized actions of third persons. Plaintiffs did allege that ''said defendant well knew that said tractor in its unlocked condition was a dangerous instrumentality.'' The trial judge in his wisdom, in the exercise of his discretion, in the performance of his duty granted plaintiffs a new trial believing, as he must have believed, that the evidence was against the verdict and that plaintiffs should have the further opportunity to produce additional evidence in support of their allegations.

In *Richards* v. *Stanley,* 43 Cal.2d 60, 63 [271 P.2d 23], it was said in the majority opinion that ''In the absence of such a statute, however, it has generally been held that the owner of an automobile is under no duty to persons who may be injured by its use to keep it out of the hands of a third person *in the absence of facts putting the owner on notice that the third person is incompetent to handle it.''*

(Emphasis added.) While I do not agree with the last quoted statement or with the majority opinion in the Stanley case, it needs no citation of authority here to say that defendants had knowledge that their machines were destructive forces if driven, or meddled with, by persons not specially trained. The record shows, without contradiction, that defendants knew, and feared, that harm would come to others if the machines were meddled with by untrained strangers. Section 449 of the Restatement of Torts states the rule as follows: "If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby." (*McEvoy* v. *American Pool Corp.*, 32 Cal.2d 295, 298-299 [195 P.2d 783].)

In order that an appellate court may reverse an order of a trial court granting a new trial, it must be found that the trial judge in so doing was guilty of *a gross, manifest and unmistakable abuse of discretion*; it must also be found that the trial judge violated his duty because it is his duty to grant a new trial whenever in *his opinion* (not that of the reviewing court) the evidence on which a decision rests is insufficient to justify the decision. Under the facts as presented by this case, and the law as it stands in this state, how can it possibly be said that the trial court abused its discretion?