[Civ. No. 11001.   Third Dist.   Sept. 23, 1965.]

ROY PREMO, JR., et al., Plaintiffs and Appellants, v. DOUGLAS R. GRIGG et al., Defendants and Respondents.

Watt & Peckham, Jordon N. Peckham and Ted W. Isles for Plaintiffs and Appellants.

Laughlin & Craig and Robert E. Laughlin for Defendants and Respondents.

PIERCE, P. J.—Plaintiffs appeal from a summary judgment in a wrongful death action.

Defendants' motion therefor was accompanied by the declaration of Robert E. Laughlin, defendants' attorney, and by certain depositions which were considered by the court under the parties' stipulation. The grounds of the motion were that as a matter of law defendants were not negligent, in that said declaration and depositions showed no duty of care existed; also that plaintiff Roy Premo was guilty of contributory negligence barring recovery. We find the summary judgment was properly granted.

The complaint alleged that defendants had negligently permitted a dangerous condition to exist on their restaurant premises, to wit: a hot water supply system with water at such dangerous and excessive temperatures as to be likely to cause severe burns to anyone using the water. It was fur-

ther alleged that on November 10, 1962, plaintiff Roy Premo, not knowing that the water was at a dangerous and excessive temperature, had drawn a bucket full from the tap and had set the bucket on the floor; that his daughter, Debra, had fallen into the bucket, receiving severe burns from which she died on January 10, 1963.

The facts established by the declarations and depositions before the court in the summary judgment proceeding were these: the place is a pizza parlor owned and operated by defendants. Plaintiff Roy Premo was employed there as a part-time dishwasher and janitor. On the night in question he was cleaning the place, assisted by his wife, plaintiff Loyce C. Premo. The couple had brought their 4-year-old daughter, Debra, with them as had been their custom. Defendants knew of this custom and tacitly permitted it. The father, preparatory to a floor-mopping operation, filled a bucket with undiluted hot water from one of the kitchen taps and carried the bucket into the front dining room where he left it unattended, returning to the kitchen. Neither his wife nor the child was then in the room where the bucket had been left. Three to five minutes later Premo and his wife heard the child scream. Mrs. Premo, who had been working in the hallway adjacent to the dining room, was the first to reach her daughter, found her immersed in the bucket. The child died from burns received.

A day or two after the accident defendant Kinner told Premo, according to the latter's deposition, "the water was 180 degrees according to the thermostat on the water heater." The father testified he knew the water was hot when he drew it from the tap, knew that it was too hot for anyone to "bathe" in, but did not realize just how hot the water was.

Water used for dishwashing in restaurants such as the one here involved is required to be heated to at least 180 degrees Fahrenheit. (Health & Saf. Code, § 28559.)

The evidence shows that although defendants knew that Premo was using water from the kitchen tap to fill his bucket for the floor-mopping operation they were unaware of the fact that he was using the hot water without mixing it with cold.[1]

---

[1]Appellants' brief states: "*Both defendants* knew that Plaintiff-father followed a customary procedure of filling a bucket with *pure hot water* and setting it on the floor to mop the floors with it." (Italics supplied.) That is an inaccurate statement of the record. Following is an excerpt from the deposition of defendant Kinner: "Q. Before this accident occurred, did you know whether he [i.e., Premo] filled his bucket with pure hot water to mop the floors with? A. Yes. . . . A. Wait

It is settled law, which defendants concede, that a summary judgment is proper when it clearly appears from the declarations, affidavits and depositions before the court that there is no possible triable issue of fact. (Code Civ. Proc., § 437c; and see *Aguirre* v. *Southern Pac. Co.*, 232 Cal.App.2d 636, 641-642 [43 Cal.Rptr. 73].)

On the facts recited above, we hold that as a matter of law plaintiffs have no triable cause of action.

■ A cause of action for negligence consists of four elements: (1) the duty of the defendant with respect to the injured person's injury; (2) the violation of that duty; (3) the causal relation between the defendant's conduct and the injury suffered; and (4) the plaintiff's loss, i.e., damages. (Prosser, Torts (3d ed.) p. 146; see Green, *Duties, Risks, Causation Doctrines*, 41 Tex.L.Rev. 42, 59.)

The problem in the case at bench is one of intervening cause; whether there intervened a ''force'' which was a ''superseding cause.'' The California Supreme Court recently has considered the superseding intervening cause cases, as one eminent scholar in the field of torts has declared courts should do,[2] not as presenting issues of causation, or even of proximate (i.e., legal) causation, but as a problem of determining the duty of the defendant to protect the person injured against the particular intervening cause.

■ In general, when a third person becomes aware of danger, or should, if he acted reasonably, be aware of it, a defendant has a right to assume that he will act reasonably and will not be held liable for the intervening act. It is only where the intervening misconduct is to be anticipated, ''and the risk of it was unreasonable, that liability will be imposed . . . .'' (Prosser, *op. cit. supra*, p. 323.)

a minute. Only to the extent the bucket was filled. Which knob he used, I have no reference to.'' Grigg testified: ''Q. Did you have any knowledge before this accident, that he would fill the bucket with straight hot water without mixing any cold in it? A. No, I didn't.''

[2]Dean Prosser (*op. cit. supra*, p. 322) says: ''Almost invariably these cases present no issue of causation, since there is no doubt whatever that the defendant has created the situation acted upon by another force to bring about the result; and to deal with them in terms of 'cause' or 'proximate cause' is only to avoid the real issue. The question is one of negligence and the extent of the obligation; whether the defendant's responsibility extends to such interventions, which are foreign to the risk he has created. It is best stated as a problem of duty to protect the plaintiff against such an intervening cause. A decision that the defendant's conduct is not the 'proximate cause' of the result means only that he has not been negligent at all, or that his negligence, if any, does not cover such a risk. . . .''

Illustrative are the unlocked-car cases. In *Richards* v. *Stanley* (1954) 43 Cal.2d 60 [271 P.2d 23], our Supreme Court (per Justice Traynor) held (on p. 63) that an owner of an automobile is generally under no duty to persons injured by a thief of the car. This was held true despite an ordinance requiring that cars be locked. (The ordinance was held not designed for the protection of the victim of the thief's negligence.) It was stated in *Richards* (on p. 65) "Ordinarily . . . in the absence of a special relationship between the parties, there is no duty to control the conduct of a third person so as to prevent him from causing harm to another."

In *Richards, supra,* there was a forewarning of a rule announced in a later California case in the statement by the court (on p. 66): "In the present case Mrs. Stanley did not leave her car in front of a school where she might reasonably expect irresponsible children to tamper with it. . . ." The later case is *Richardson* v. *Ham* (1955) 44 Cal.2d 772 [285 P.2d 269]. There a construction partnership was held liable for leaving an unlocked bulldozer in a position where it was readily accessible to teenagers, three of whom did appropriate it, driving it off a mesa and seriously injuring plaintiffs. It was held (on p. 776) there was a reasonably foreseeable risk that defendants' bulldozers might be tampered with when left unattended. This liability was extended in *Hergenrether* v. *East* (1964) 61 Cal.2d 440 [39 Cal.Rptr. 4, 393 P.2d 164], to apply where a 2-ton truck was left unlocked and parked overnight on Redding's so-called "skid row." (See also *Murray* v. *Wright,* 166 Cal.App.2d 589 [333 P.2d 111].) We turn now to cases other than the unlocked vehicle type.

In *Gonzalez* v. *Derrington* (1961) 56 Cal.2d 130 [14 Cal. Rptr. 1, 363 P.2d 1], plaintiffs in four consolidated actions sued for wrongful death and injuries incurred in an explosion and fire intentionally caused by two men who had bought the gasoline in a service station. The gasoline had been sold in an open container in violation of an ordinance. Although violation of the ordinance was negligence, it was held that the injuries and deaths were produced by an "efficient, intervening cause," and that the violation of the ordinance was therefore not the proximate, or legal, cause. The court points out (on p. 133) that "It cannot logically be said that there is an 'extreme danger,' or that it is foreseeable, that gasoline bought in an open can will be used intentionally to injure others." Although the intervening act by the third persons in *Gonzalez* was an intentional tort, it is the nature of the hazard, the reasonable likelihood that a third person will act in a

particular manner, which fixes the duty and liability—this regardless of whether that person's act be innocent, negligent, intentional, or criminal. (*Richardson* v. *Ham, supra,* 44 Cal. 2d 772, 777.)

We find in other jurisdictions cases involving injuries to children where defendants, although their acts started a chain of causation leading to the child's injury, were held not liable because of *superseding* intervening forces, e.g., in *Leoni* v. *Reinhard* (1937) 327 Pa. 391 [194 A. 490], where a piece of unslaked lime fell from defendant's truck and was picked up by a boy walking along the highway. He put it in a bucket of damp earth and fish worms he was carrying and almost immediately it exploded, causing the loss of an eye; also in *Dahl* v. *Valley Dredging Co.* (1914) 125 Minn. 90 [145 N.W. 796, 52 L.R.A. N.S. 1173], where a dredging company kept naphtha in a quart coffee pot for use in priming a gasoline engine. On a Sunday boys playing on the dredger lighted a match and set fire to some waste. One of them found the pot of naphtha and poured it onto the fire and was seriously burned. (Cf. *Richardson* v. *Ham, supra.*)

Regarding cases of the type discussed above, Dean Prosser states (Prosser, *op. cit. supra,* p. 321) : ''. . . The virtually unanimous agreement that the liability must be limited to cover only those intervening causes which lie within the scope of foreseeable risk, or have at least some reasonable connection with it, is based upon a recognition of the fact that the independent causes which may intervene to change the situation created by the defendant are infinite, and that as a practical matter responsibility simply cannot be carried to such lengths.''

Section 442 of the Restatement Second of Torts sets forth ''Considerations Important in Determining Whether an Intervening Force is a Superseding Cause.'' They are:

''(a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

''(b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation.

''(c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

"(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

"(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

"(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion."

■ Applying these considerations to the facts of the case at bench, we cannot escape conclusion that this intervening act was, indeed, a superseding cause. That the harm was brought about by an intervening force and that it was different in kind, extraordinary and not the normal result of the situation created by defendants cannot be doubted. This is well illustrated by the difference between the instant case and the case upon which plaintiffs place principal reliance.

In *Schipper* v. *Levitt & Sons, Inc.* (1965) 44 N.J. 70 [207 A.2d 314], an infant was severely scalded by hot water drawn *by him* from a bathroom tap in a mass produced home in Levittown. There had been a warning that water hotter than customary was being supplied and users were cautioned to open the cold water tap first, thereafter mixing cold water with hot to the desired temperature. A tenant with no knowledge of the condition described, or of the warning given, leased one of the homes. His young son, also not warned, turned on the hot water tap and was injured. It was held (on p. 320 [207 A.2d]) that "it was entirely foreseeable that the Guide [i.e., the warning of excessive heat] would never come to the attention of many persons who would come in contact with the heated water such as invited guests, and indeed the infant plaintiff himself. See Prosser, Torts, section 96, at p. 665 (3d ed. 1964). If ordinary negligence principles are applied, it may readily be found that in view of the likelihood and gravity of the danger and the ease with which it could have been avoided, Levitt had failed to exercise reasonable care in the design and installation to avoid unreasonable risk of harm."

Contrast those facts with the facts of the case here. It was not only reasonable for defendants to have a water supply system furnishing hot water at 180 degrees; they were required by law to do so. It may be arguable that there was a duty to warn those coming in direct contact with the hot water tap that its heat was excessive, but the person injured here did not come into direct contact with the hot water tap. It was brought to her by her father after several intervening acts. It would be no more reasonable to impose liability in

this case than to hold the owner of a kitchen range liable because some third party had allowed a bucket of water to reach a boiling point on the range before removing and using it with resultant injury.

Plaintiffs argue that the issue we discuss is one for jury determination. ■ When the existence of a duty rests upon the question of determining the reasonable foreseeability of injury to the plaintiff, as we believe this case does, liability will be primarily a matter for jury determination—unless reasonable minds cannot differ. (*Richards* v. *Stanley, supra,* 43 Cal. 2d 60, 66.) Stated in another way, where the facts are clear and undisputed it is a question of law for a court to determine the legal consequences of such facts. (*Parker* v. *City & County of San Francisco* (1958) 158 Cal.App.2d 597, 608 [323 P.2d 108].) Here the trial court concluded and we have concluded that reasonable minds must necessarily find under the undisputed facts that the intervening force which brought harm to plaintiffs' child was a superseding cause.

Defendants therefore cannot be held *directly* liable for negligence. ■ Neither can they be held liable *vicariously.* Had the janitor employed been a person other than a father-plaintiff, defendants would be subject to possible liability for the child's death under the doctrine of *respondent superior.* The rule is otherwise where the tortfeasor agent is the child's parent.

*Flores* v. *Brown* (1952) 39 Cal.2d 622, 630 [248 P.2d 922], stated the rule then settled in California that (1) in the absence of an agreement to the contrary a cause of action for personal injuries to either husband or wife arising during the marriage and while they were living together was community property; (2) so also was a cause of action for damages suffered by the parents because of the wrongful death of their child. Therefore, it was necessary in both personal injury and wrongful death actions to impute the negligence of one spouse to the other. The reason for the rule was to prevent the negligent spouse from profiting by his own wrong, i.e., to prevent unjust enrichment.

In 1957 section 163.5 was added to the Civil Code providing: ''All damages, special and general, awarded a married person in a civil action for personal injuries, are the separate property of such married person.'' The Legislature did not mention damages suffered by the spouses as parents from the wrongful death of a child. In 1960 this court in *Cervantes* v. *Maco Gas Co.,* 177 Cal.App.2d 246, 250 [2 Cal.Rptr. 75]

(hearing by Supreme Court denied) held that the legislative limitation of damages to those ''for personal injuries'' was not inadvertent, and that the negligence of one spouse contributing to the death of a child must be imputed to the other innocent spouse, thus barring recovery by either. Several sessions of the Legislature since the *Cervantes* decision have met without broadening Civil Code section 163.5. It would seem therefore that the Legislature is unwilling to extend the statute to include wrongful death actions. This refusal is particularly understandable when applied to a case such as this.

It may be arguable that the innocent spouse should not be deprived of his or her share of the recovery for the wrongful death of a child resulting from the direct negligent act of another merely because the other spouse may have been contributorily negligent. It seems less plausible to permit the innocent spouse to recover when the marital partner (who will almost inevitably benefit as a member of the family by the recovery) is the party *solely* responsible for the death.

The judgment is affirmed.

Friedman, J., concurred.

Regan, J., concurred in the result.

A petition for a rehearing was denied October 15, 1965, and appellants' petition for a hearing by the Supreme Court was denied November 16, 1965. Mosk, J., was of the opinion that the petition should be granted.